70 So.2d 589

**CORTINAS v. MURRAY.**

No. 41050.

Jan. 11, 1954.

Rehearing Denied Feb. 15, 1954.

Stanley McDermott, Jr., Stanley McDermott, Sr., for defendant-appellant.

Frederick G. Veith, Robert J. Lacey, Jr., New Orleans, for plaintiff-appellee.

McCALEB, Justice.

This is a suit to confirm and quiet a tax title to four lots of vacant ground situated in the city of New Orleans.[1] The property, which has a present estimated value of $9,000, was acquired in 1935 for $650 by one Lucy Anne Murray, a retired Negro school teacher. She died in 1936, being survived by her sister and sole heir, Peggy Frances Murray. In 1937, the land was adjudicated to the State for the taxes due for the year 1936 and, in 1939, Peggy Frances Murray, as successor to her sister,

redeemed it from the State but failed to record the certificate of redemption in the Conveyance Office. The fact of redemption was nevertheless brought to the attention of the appropriate assessor of the Parish of Orleans and the State Tax Collector, being noted on the records in the office of the latter, and the property was thereafter placed on the assessment roll for the City of New Orleans and Parish of Orleans as belonging to Peggy Frances Murray. She paid all taxes due the city and state for the years 1940, 1941, 1942 and the city taxes for 1943 but neglected to pay the 1943 state taxes.

On November 18, 1944, the lots were sold by the state tax collector to plaintiff herein for the unpaid 1943 taxes and costs, amounting to $14.13. A formal act of sale was executed on February 2, 1945, and registered in the Conveyance Office on the following day. From 1944 to 1950, Peggy Frances Murray continued to pay all taxes due on the four lots, notwithstanding the tax sale to plaintiff, who neither paid nor offered to pay to anyone the taxes due for those years.

In March of 1950, shortly after the accrual of the five year peremption provided by Section 11 of Article 10 of the Constitution for the setting aside of tax sales for any cause (except on proof of pay-

---

1. The action is brought under LSA–R.S. 47:2228 (formerly Act 106 of 1934) which was enacted pursuant to the man-

date of Section 11 of Article 10 of the Constitution.

ment of the taxes for which the property was sold prior to the date of the sale), plaintiff advised Peggy Frances Murray that he had purchased the lots at tax sale and, a few months later, wrote two other letters offering her $150 and $200 for a quitclaim deed.

Following a rejection of these offers, this suit was instituted. Meanwhile, Peggy Frances Murray died. Her succession was opened and her universal legatees, one Felix Barre and his wife, upon being recognized as such, were substituted as parties defendant in the case. They resisted plaintiff's demand by assailing the validity of the tax title on three grounds—(1) that all legal requirements as to notice and assessment were not observed; (2) that the State, and not Peggy Frances Murray, was the legal owner of the property at the time of the tax sale and (3) that the failure of plaintiff to pay taxes and otherwise manifest an interest in the property within the five year period constituted an abandonment by him of his claim to ownership.

After a hearing, the trial judge rejected these contentions and granted judgment for plaintiff, as prayed for. Wherefore this appeal.

■ Appellants' contention that the tax sale is void because the requirements of the law were not followed, with respect to the assessment and notice to the tax debtor, is not supported by the facts. The record shows that the lots were assessed in 1943 to Peggy Frances Murray, the real owner; that notice of her delinquency was issued by the State Tax Collector; that unsuccessful attempts were made to serve this notice upon her and that it was only after the tax collector was unable to make the service that he advertised the property for sale in the name of Peggy Frances Murray as an unknown owner.

■■ But, above this, even if it be assumed that there were defects in the tax title, they were cured by the peremption of five years prescribed by Section 11 of Article 10 of the Constitution. This peremption, as stated in our recent decision of King v. Moresi, 223 La. 54, 64 So.2d 841, 842, "announces the public policy of this State to set at rest tax titles once and for all." It applies to all tax sales, save those in which there is proof of prior payment of the taxes for which the property was sold and in cases where the owner has remained in corporeal possession after the sale.[2]

The second proposition presented by appellants is that the 1943 tax sale is void because the State was the legal owner of the lots at the time of the sale. This

---

2. In these instances, the operation of the peremption is declared to be suspended during the time the owner continues his occupancy. See Baldwin Lumber Co. v. Dalferes, 138 La. 507, 70 So. 493; Kivlen v. Horvath, 163 La. 901, 113 So. 140 and Westover Realty Co. v. State, 208 La. 163, 23 So.2d 33.

point is premised on the idea that, since Peggy Frances Murray did not cause the certificate of redemption to be recorded in the Conveyance Office after she redeemed the property in 1939, she did not become the legal owner thereof and that, accordingly, the State was without right to sell it at tax sale as it was vested with title in 1944.

■ The point is not tenable. LSA–R.S. 47:2224 (formerly Sections 62 and 69 of Act 170 of 1898, as amended), which is the professed foundation for the contention, merely provides that, when the certificate of redemption is recorded in the conveyance office of the parish wherein the redeemed property is located, it shall be taken "as evidence" of the redemption of the same as is described in the certificate. This does not mean, nor can the language be construed to imply, that failure to record the redemption certificate nullifies its legal effectiveness or that the State remains the owner of the redeemed property.

Finally, counsel for appellants vigorously urge us to hold that plaintiff has abandoned his claim of ownership under the tax title. It is shown that plaintiff, a professional dealer in tax titles, did not give personal notice to the tax debtor, an elderly colored woman, of his purchase and permitted her to continue to pay all taxes falling due thereon, while he silently waited, not only for the time for exercise of her right of redemption to expire, but also for the constitutional peremption to accrue so that she would be deprived of any challenges respecting the legality of his title.

■ There is no legal basis for the maintenance of this plea. It is settled by a long line of cases that a tax purchaser is not required to take corporeal possession of the property; it suffices, in cases of vacant land, for him to record his tax deed which results in giving him civil or constructive possession and is all that is required to entitle him to the protection of the constitutional peremption. See Ashley Co. Ltd. v. Bradford, 109 La. 641, 33 So. 634; Koen v. Martin, 110 La. 242, 34 So. 429; Slattery v. Kellum, 114 La. 282, 38 So. 170; Lavedan v. Choppin, 119 La. 1056, 44 So. 886; Hirst v. Xeter Realty Co., 138 La. 398, 70 So. 339; Hart Land & Imp. Co. v. Kelly's Heirs, 145 La. 349, 82 So. 366 and Stone v. Kimball's Heirs, 199 La. 240, 5 So.2d 758.

In the last-cited case, where suit was filed some 12 years after the recordation of the tax deed, the defendants made a claim of abandonment like that presented by appellants in this matter. The court rejected it, holding that civil or constructive possession arising from the registry in the conveyance records of the tax deed was all that was necessary to give effect to Section 11 of Article 10 of the Constitution. There, as here, the appellants relied on the cases of Slattery v. Heilperin &

695

Leonard, 110 La. 86, 34 So. 139 and Head v. Howcott Land Co. Ltd., 119 La. 331, 44 So. 117, but the court found that those cases were not in point and proceeded to distinguish them.

 Nor does the fact that plaintiff permitted the tax debtor to pay taxes on the property during the five year period after the legal situation. If the taxes had not been paid, plaintiff stood to lose the property but his mere silence in not informing the tax debtor of his purchase and in allowing her to pay the taxes in the belief that she was still the owner, while uncommendable, does not provide a legal ground for denying to him the benefit of the constitutional peremption.[3]

And appellants' criticisms directed against plaintiff and the type of business in which he is engaged provide no reason to defeat his title. It is enough to say that plaintiff's occupation is not prohibited and that his conduct in this case, although far below our concept of ethics and good conscience, is not reprobated by law. After all, the primary dereliction lies with the tax debtor who failed to discharge the burden placed upon her property for support of the government and did not avail herself of her right of redemption within the time allowed by law.

The judgment is affirmed.

3. Appellants, of course, as the heirs of the tax debtor, have the right to require

plaintiff to reimburse them for the taxes paid for his account.