97 So.2d 669 (1957)
Mrs. Margaret Lill STARING et al., Plaintiffs-Appellees,
v.
William L. GRACE, Jr., Defendant-Appellant.
No. 4438.
Court of Appeal of Louisiana, First Circuit.
October 4, 1957.
Rehearing Denied November 19, 1957.
Writ of Certiorari Denied January 9, 1958.
*670 Obier & Middleton, Plaquemine, for appellant.
Borron, Owen, Borron & Delahaye, Plaquemine, for appellee.
TATE, Judge.
The widow and children of Dr. Houston Staring brought this jacitory action to establish their right to possession of a certain 61-acre tract in Iberville Parish and to annul a 1939 tax sale thereof to defendant Grace.[1] By defendant's answer claiming title, this suit was converted by defendant into a petitory action, with defendant having the burden of proving his title to the land.
Defendant appeals from adverse judgment recognizing plaintiffs' ownership of the property in question and annulling the tax deed upon which defendant relies as the basis of his title.
This tract originally belonged to Dr. Staring's father, Joseph Staring, who died in 1920. (Dr. Staring himself passed away in 1928.) The property was assessed on the tax rolls of Iberville Parish to the "Estate of Joseph Starring" from 1920 right on up at least through 1951, immediately prior to the present suit; and it was under this assessment that the land was sold on July 1, 1939, for the unpaid taxes of 1938 by tax sale deed recorded on July 6, 1939.
Plaintiffs urge the invalidity of the tax sale due to lack of notice to the true owners, relying upon such cases as Di Giovanni v. Cortinas, 216 La. 687, 44 So.2d 818; Gottlieb v. Babin, 197 La. 802, 2 So.2d *671 218; see also Scheller v. Goode, La.App. 1 Cir., 69 So.2d 96. The record indicates this contention as to the original invalidity of the tax sale to be correct.
The serious question before us, however, is whether despite this original invalidity, plaintiffs are barred from attacking the tax sale by the constitutional peremption of five years, Article 10, Section 11, La. Constitution, of 1921, LSA-Const., which applies even when no notice of the tax sale is given.
Only two grounds are recognized to evade application of this peremptive bar to annulment of tax sales despite any original invalidities thereof: (1) proof of prior payment of taxes for which the property was sold; (2) continued corporeal, physical possession of the property after the tax sale, by the tax debtor previously owning the property, sufficient to prevent the accrual of the five years' peremption in favor of the tax purchaser at the tax sale such open and active possession being said to constitute a constant protest against the tax title preventing the accrual of prescription. Magnolia Petroleum Co. v. Marks, 225 La. 805, 74 So.2d 36; Thurmon v. Hogg, 225 La. 263, 72 So.2d 500; Cortinas v. Murray, 224 La. 686, 70 So.2d 589; King v. Moresi, 223 La. 54, 64 So.2d 841; Allen v. Morgan, La.App. 2 Cir., 80 So.2d 202; Scheller v. Goode, La.App. 1 Cir., 69 So.2d 96.
There is and was no habitation upon the tract in question, which was (except for the cultivateable front 5-15 acres) mostly wood and marsh land. Tenants of the plaintiffs were proved to have exercised open, corporeal, and physical possession by agricultural cultivation of the property up to 1933, and from 1946 up to the date of the trial. During the period between 1933 and 1946, there was no agricultural cultivation, occupancy by tenants, or timber cutting exercising possession by or for plaintiffs; and although on three sides the neighboring landowners (not the tax debtors) maintained the fences, the barbed wire strands were down along the tract's front, or road side, and the land was an open pasture for the neighborhood cattle. During this interval (1933-1946) that the tract was unrented, the property was periodically inspected for timber trespassing by plaintiffs, their relatives, or Harry Reece, a friend who lived near the property.
Based upon the burden of proving his title placed upon defendant Grace, as plaintiff in the petitory action, the learned trial court held that Grace, as tax sale purchaser, had the burden of proving that possession of the tax debtors had not suspended the peremptive five years. The trial court then held that in view of the admitted non-possession of the tax purchaser following the tax sale, the sole possession over the tract in question had continued to be exercised by the tax debtors through their general supervision of the tract and through their continued payment of the subsequent taxes thereupon.
It is with some regret that we must disagree with the conclusions of our learned brother below, recognizing as we must that our contrary resolution of this legal question forces us to reach a result which does not strike us as being as fair as that which he reached. (For by the simple payment of $10.98 back in 1939, without taking the slightest step to take possession of the land or to notify the widow of her lapse in the tax payment, the tax purchaser obtains by the result we have reached title to this valuable tract of land, upon which he never paid the taxes and upon which the widow has paid the taxes for herself and the other ownersher childrenevery year from 1920 up to the present, except for those of the year 1938.)
But the party relying upon possession as an avoidance of the prescription in favor of the tax purchaser appears to have the burden of proving same, Board of Com'rs, etc. v. Sperling, 205 La. 494, 17 So.2d 720. Further, such prescription does accrue in favor of the tax sale purchaser if *672 the possession by the tax debtor is merely civil or constructive, such as by payment of taxes or that following an initial corporeal possession; for the only type of possession permitted by its nature of continuous protest to serve to prevent the perfection of the peremptive bar to annulment of the tax sale is an actual, physical, active, open, and continuing exercise of the right of possession by the tax debtor, Meshell v. Bauer, 215 La. 619, 41 So.2d 237; Stone v. Kimball's Heirs, 199 La. 240, 5 So.2d 758; Pill v. Morgan, 186 La. 329, 172 So. 409; Levenberg v. Shanks, 165 La. 419, 115 So. 641; Allen v. Morgan, La.App. 2 Cir., 80 So.2d 202, 203.
For instance, in Board of Com'rs v. Sperling, 205 La. 494, 17 So.2d 720, at pages 722-723, it is stated that the burden of the tax debtors seeking to avoid the peremptive bar to annulment of the tax sale is "to show actual corporeal possession by which they exercised some claim of exclusive dominion over the property, a claim operating as a continuing protest against the tax title." (Italics ours.)
That the nominal supervision over the land exercised by plaintiffs' friend during the years 1933 and 1946 (and specifically from July 6, 1939, when the tax sale was recorded, through July 6, 1944, when the peremptive five years expired) does not constitute such apparent corporeal detention of the tract as to satisfy this jurisprudential test of the possession required, can we think best be shown by the actual testimony of plaintiff Mrs. Staring and Harry Reece as to the nature of his supervision over the property.
Mrs. Staring's testimony is as follows:
"A. Well, that was beginning on the termination [in 1933] of the lease with Barnes; then is when I asked Harry Reece, or he asked me if he might run his cattle in there, and I said he might, with the consideration of looking after the property for me, and he did so until the time that I leased to the Thomases. (Tr-32)
"* * * * * *
"A. Well, if it was at his discretion to cultivate thathe had permission to do what he wanted with the land[although Reece did not actually cultivate the land] I wouldn't have objected to it. I didn't receive any return from it because my agreement with him was as I stated to you.
"Q. Mrs. Staring, then you received no rent from this arrangement that you had?
"A. I considered the fact that he looked after the property and acted as overseer as rent.
"Q. Were you ever given any information as to whether or not there was any fences around the property at that time?
"A. Well, if he wanted to keep them up, that was his responsibility." (Tr-33)
In the words of Harry Reece, the relationship is set forth as follows:
"Q. Then what did she ask you to help her with down there? What were you to do with the property? A. She told me this: `Harry, I want you to look over my property, because sometimes I am up on the Highland and when I need a man or something on the place, you look out and get me a good man,' and I did do that which she asked me. Sometime ago, after looking over it, and seeing how things were, she come to be short for a man, and I looked out and got her one.
"Q. I don't want you to say anything you don't know, Harry; but before you went on there, before you got him on there, you had been talking to Mrs. Staring and you were looking after somebody to put on the property? A. That's right. She used to come down all the time and tell me, Harry, you try to find me a good man. I was out looking and trying to find a man.

*673 "Q. Did she ask you to watch out after the timber on the property? A. She sure did ask me that.
"Q. Did you check it from time to time? A. I did. I'd go across the field and go back in there sometimes and check it." (Tr-117-8)
"Q. Did she tell you that you could have part of the timber if you needed it? A. She told me I could have anything I wanted on that place if I needed it, anything I wanted.
"Q. Did you ever need or take any of this? A. No, sir; I wouldn't take her timber, I never would use any of her timber.
"Q. But you had a right to do so? A. I could have done it if I wanted to. I could have did it, yes. I never would do it though." (Tr-119)
Thus, although as between Mrs. Staring and Barnes, the latter may have had the right to exercise open, active, corporeal possession of the property by cultivation, fencing, timber cutting, or otherwise; this right to corporeal detention was not actually exercised by Barnes so as to constitute an open and apparent and obvious protest against the tax sale preventing the running of the peremptive five years after which the tax deed was constitutionally immune from attack.
In oral argument, very able counsel for appellee also contended that the record could support a finding that the 1938 taxes were paid, since the tax rolls were marked "Paid" for the 1938 tax liability for the tract and since Mrs. Staring testified that she thought she had paid the taxes every year. The burden, however, is upon the tax debtor to prove payment of the taxes for which the property was sold, Stone v. Kimball's Heirs, 199 La. 240, 5 So.2d 758. Although Mrs. Staring stated that she had receipts for most of the taxes paid, she did not introduce any receipt for the 1938 taxes. We may take judicial notice that in many parishes after the annual tax sales the unpaid taxes are marked "paid" upon receipt of the payment by the tax purchaser, See e. g. Wright v. Cyprian, La.App., 96 So.2d 882; and, as in that case, rely upon the general presumption that public officials properly carry out their duties so that, in the absence of evidence to the contrary, it is properly presumed that the tax sale of the property would not have been made had the taxes been paid prior thereto.
As in the present case, in Cortinas v. Murray, 224 La. 686, 70 So.2d 589, the purchaser at tax sale, beyond recording his title, did nothing to take possession of the land sold at tax sale and further permitted the tax debtor to pay the taxes through the succeeding years without attempting to pay them himself. The following remarks therein at 70 So.2d 591 seem to be applicable to the present case:
"* * * It is settled by a long line of cases that a tax purchaser is not required to take corporeal possession of the property; it suffices in cases of vacant land, for him to record his tax deed which results in giving him civil or constructive possession and is all that is required to entitle him to the protection of the constitutional peremption. * * *
"Nor does the fact that plaintiff [tax sale purchaser] permitted the tax debtor to pay taxes on the property during the five year period after the legal situation. If the taxes had not been paid, plaintiff stood to lose the property, but his mere silence in not informing the tax debtor of his purchase and in allowing her to pay the tax in the belief that she was still owner, while uncommendable, does not provide a legal ground for denying to him the benefit of the constitutional peremption."
Viewing the harsh results of the present case, we note the argument that the strong public policy previously favoring validity of tax salesthat is, to protect the *674 public fisc, see e. g. Mayer v. Ozenne, La. App. 1 Cir., 87 So.2d 135no longer should apply in the present decade when land taxes no longer form a substantial portion of governmental revenues. But this argument, perhaps, addresses itself to the legislature rather than the courts.
For the foregoing reasons the judgment of the District Court is reversed, and it is ordered and decreed that the tax title of W. L. Grace, Jr., be quieted and that he be recognized to be the owner of:
A certain tract of land lying and situated in the Parish of Iberville, Louisiana, on the south bank of Bayou Manchac and described as Lots 4 and 5 of Section 27, Township 8 South, Range 1 East, Southeastern District East of the Mississippi River, containing 61.56 acres.
Plaintiffs-appellees to pay all costs thereof.
Reversed and rendered.
NOTES
[1] The Shell Oil Company, defendant's mineral lessee, was originally a co-defendant; but said lease having expired, Shell is not a party to this appeal.