SAMUEL, Judge.
On May 28, 1969 Sam Laventhal, Mimi Zebrick and Mrs. Claire Hingle Zebrick, individually and as natural tutrix of her minor children, filed suit against Lake, Inc.,[1] to annul a May 9, 1962 tax sale at which the defendant purchased an undeveloped lot of ground in Jefferson Parish.[2] Plaintiffs contend their ancestor *523 in title, Wassyl Zebrick, purchased the property in 1961 and thereafter their continued possession of the lot prevented title from vesting in the defendant by virtue of the five year peremptive period contained in Article X, § 11 of the Louisiana Constitution of 1921.
The defendant answered, denying the allegations material to the question of possession and asserting its ownership of the property by virtue of the tax sale for nonpayment of 1961 state and parish taxes. It also filed a reconventional demand seeking to have its title to the property confirmed and quieted in accordance with Article X, § 11 of the Louisiana Constitution of 1921 and LSA-R.S. 47:2228 and, alternatively, sought to be reimbursed for all money expended on the property, with interest and penalties.
After trial on the merits the lower court rendered judgment against the plaintiffs on their demand and in favor of the defendant on its reconventional demand, recognizing the defendant as the sole owner of the property and confirming its title thereto. Plaintiffs have prosecuted this appeal from that judgment.
Most of the essential facts were stipulated by counsel and are not in dispute. Wassyl Zebrick, the husband of Mrs. Zebrick and the father of the other Zebricks mentioned in this opinion, purchased the property on April 5, 1961. On August 9, 1961 he sold an undivided one-half interest to Mr. Laventhal. The defendant, Lake, Inc., purchased the property at a sheriff’s sale on May 9, 1962, for unpaid 1961 state and parish taxes. No notice of sale was given to Zebrick or Laventhal and it was expressly stipulated that if any such notice had been given it would have been given to the previous owners, Mr. and Mrs. William Lee Wiles.[3] Mr. Zebrick died on April 6, 1968 and his wife and children are now entitled to his interest in the disputed property. The defendant’s tax deed was discovered by plaintiffs when they attempted to sell the lot and this suit subsequently ensued.
It was agreed by counsel that the only question for the lower court’s consideration was whether plaintiffs[4] maintained sufficient possession of the property to prevent their losing title to it by virtue of the five year constitutional peremptive period. The case was tried on that issue alone and it is the only issue for review by this court.
The evidence presented by the litigants leaves much to be desired. Mrs. Zebrick testified her late husband purchased the property in 1961 while employed as a machinery salesman. He subsequently established his own business in which he purchased and sold used machinery and engines. When he did not have an immediate purchase for pieces of machinery, he stored them in various places, one of which was the lot in question. She further testified he began this practice in 1962 by storing a large crane, visible from Jefferson Highway, for approximately two years until some time in 1963 or 1964. However, her testimony in this regard was quite vague and she was not able to establish the date of the removal of the crane from the lot with any degree of accuracy. She also saw other pieces of bulky, rusty equipment on the property and stated her husband remained in this business continuously until 1967, approximately one year before his death. Nevertheless, nowhere in her testimony does she establish that he stored equipment on the property to that time. And while she claimed her husband had the grass cut on the lot, and paid taxes and sewerage fees for it, she was unable to produce documentary evidence of those actions on his part.
*524 George A. Raymond, Jr., lived next to the lot for approximately twenty years. He testified a crane and two electric generators were stored on the lot. In connection with his testimony two photographs were introduced in evidence, both taken by Mrs. Raymond on the same day. One of the photographs shows Raymond’s automobile partially covered with snow and “Dec. 31” written on the rear glass. The date on the license plate is not clear, but it appears to be “1963.” The other photograph shows one of the generators on the lot. While he testified the generators stayed there so long they deteriorated to almost nothing, he was unable to establish when any property was placed there, when it was removed, or who was responsible for either act. His only testimony with regard to grass cutting was that prior to the snow a Mr. Hingle, Mrs. Zebrick’s father, performed this function several times. However, he denied knowledge of the dates on which Mr. Hingle cut the grass.
The testimony of Miss Mimi Zebrick, daughter of Wassyl Zebrick, added little to that of her mother. She stated she traveled Jefferson Highway daily on her way to school and the crane purchased by her father was on the lot until “at least the first few months” of 1964. She also saw other large machinery on the lot, but she did not establish when it was removed.
Sam Laventhal, the other co-owner of the lot, testified he sold and delivered a pump to Mr. Zebrick some time after 1961, but he did not remember the date of the delivery. He also testified he had a small hopper on the lot as of the date of the trial; it was placed there near the end of 1969, after suit was filed. He knew nothing about the payment of taxes or other charges, having relied on Mr. Zebrick to handle the mortgage, taxes, and affairs pertaining to the lot and to inform him of the amount of money owed for his proper share of expenses.
Frank B. Wood, president of the defendant corporation, denied ever having seen any equipment on the lot, although he claimed to have visited the property two or three times each year for the past seven years. He qualified this statement only to admit that small pieces of equipment could have been hidden in the tall grass which he stated usually was on the lot. He further testified he paid the parish of Jefferson for grass cutting, paid taxes for 1961 through 1969, and paid sewerage charges from 1964 through 1969 for the lot.
The final witness, Edward M. Mayo, was called by the defendant. He testified he lived in the area of the lot all of his life and had passed the lot on the route back to his school bus garage three or four times each week for the past twelve years. Like Mr. Wood, he also denied seeing any equipment on the lot with the exception of a school bus belonging to Mr. Raymond, one of the plaintiffs’ witnesses, which Raymond parked on the lot as a matter of convenience. Fie claimed to see nothing but weeds; but under cross examination he admitted he saw an “iron bucket” the previous summer after the grass had been cut.
There is also some dispute as to whether the property had been enclosed by a fence. Counsel for plaintiffs strongly urges that the photographs offered into evidence showing the machinery on the property as of the date of the December 31 snowfall also established the existence of a fence on the premises. A review of the photographs shows there was a chain link type fence, or a portion of one, in one of the pictures, but there is no testimony or other evidence establishing where the fence was located in relation to the property in question, nor do the photographs establish which boundaries of the property, if any, were fenced. Since the record is completely devoid of any other testimony regarding the fence, we are unable to make a determination as to whether or not the property was *525 fenced by the plaintiffs. In addition, the fence or portion of fence shown in the photograph could have been on the premises prior to the purchase by the plaintiffs; it could have been placed there by the plaintiffs, or it could have been placed there by the defendant. However, the absence of sufficient relative evidence makes it impossible to attach any legal significance to the fence.
Article X, § 11 of the Louisiana Constitution of 1921, as supplemented by LSA-R.S. 47:2228, provides for a peremp-tive period of five years from the date of the recordation of a tax deed when no notice of the tax sale has been given to the tax debtor. When more than five years intervene between the date of registry of the tax deed and the filing of suit to attack the tax sale, the five year peremptive period protects the rights of the tax purchaser. However, the peremptive period does not run if the property sold at tax sale has been subject to open, actual and corporeal possession by the tax debtor or his successors.[5] The five year peremptive period does not run so long as the tax debtor continues in such possession after the tax sale.[6] On the other hand, a tax sale purchaser is not required to take corporeal possession of the property; it is sufficient, especially in cases of vacant land, for him to record his tax deed and thereby acquire civil or constructive possession. Upon his meeting these requirements he is afforded the protection of the five year peremption.[7]
The rule has been enunciated that the possession required to prevent the loss of property by virtue of the peremption must be open, actual, physical, and of such character as to be a continuous protest against the tax sale; it also must be of such character as to form the basis of the prescription of ten years.[8]
While it is necessary to have corporeal possession, accompanied by external and public signs clearly indicating the possessor’s control and dominion over the property,[9] it is essential to examine the type and nature of the property in order to determine what type of possession is necessary to constitute open, real and actual possession thereof.[10]
In the present case, the property was a vacant lot located in a residential area. Its shape and size was somewhat unusual, being approximately 113 feet x 22 feet x 165 feet x 78 feet. Under the circumstances of its size and location, it would seem that the erection of a small to medium size building, or the storage of property or equipment, would be some of the more practical uses for which it was suited. Heneé, there is little doubt that the storage of a crane, estimated to weigh 30 tons, on the lot from 1961 or 1962 until the early part of 1964 would be such an open, actual and physical possession as to constitute a continuous protest against the tax sale.
However, plaintiffs did not bear their burden of proving the crane was on the property for the five years immediately preceding their suit on May 20, 1969. The most definite testimony elicited at the trial was that of Mimi Zebrick, who was able to establish only that she saw the crane on the property in the beginning of 1964 and *526 for the first few months of that year. If her testimony, or other evidence, had established the crane remained on the property until after May 20, 1964, plaintiffs’ suit would have been filed timely.
The same evidentiary problem exists with regard to the presence of the two generators on the lot. No evidence was introduced to establish when these large pieces of machinery were removed. The photograph showing these generators, taken simultaneously with the photograph showing the December 31 snow, at best established that they were on the lot on December 31, 1963. While there is some dispute in the record as to the date of the snowfall in question, this court may take judicial notice of natural phenomena and of unusual weather conditions.[11] In so doing, we take judicial notice of what is common knowledge in this state, that the exceedingly rare and heavy (for the New Orleans metropolitan area) snowfall of New Years Eve occurred on December 31, 1963, more than five years before this suit was filed. Therefore, the establishment of the generators on the property on that date is of no value to the plaintiffs.
The only other significant piece of equipment proven to have been on the property was a metal “bucket” which, by the admission of Mr. Laventhal, one of the plaintiffs, was placed thereon after the filing of suit. Placing equipment on the lot after the filing of suit could have no legal effect; the five year peremptive period clearly had run by that time.
For the foregoing reasons the judgment appealed from is affirmed; all costs of this appeal are to be paid by the plaintiffs-appellants.
Affirmed.

. The name of the defendant was erroneously designated in the petition, and it was stipulated at the trial that the proper name of the defendant corporation is Lake, Inc.

.The property in question is lot 9, block 3,Jefferson Court Subdivision.

. Mr. and Mrs. Wiles were also made defendants in reconvention, and their interests were protected by the appointment of a curator ad hoc.

. Including the late Mr. Zebrick.

. Board of Com’rs., Etc. v. Sperling, 205 La. 494, 17 So.2d 720; Kuhn v. Sandefur, La.App., 28 So.2d 515.

. Gibbs v. Boos, La.App., 178 So. 674.

. Staring v. Grace, La.App., 97 So.2d 669; Cortinas v. Murray, 224 La. 686, 70 So.2d 589.

. See Kuhn v. Sandefur, supra; Board of Com’rs., etc. v. Sperling, supra; and Kirn v. Pierce, La.App., 102 So.2d 90.

. Nixon v. English, 207 La. 906, 22 So.2d 266.

. P. M. Realty Co. v. Devitt, La.App., 199 So.2d 382.

. See Josey v. Granite State Fire Insurance Company, La.App., 122 So.2d 303; Ebert v. Pacific Nat. Fire Ins. Co., La. App., 40 So.2d 40; Riddle v. Allstate Insurance Company, La.App., 203 So.2d 820.