311 So.2d 600 (1975)
George A. LASSEIGNE, Jr., et al.
v.
Adolph CLEMENT et al.
No. 6664.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
Rehearing Denied May 15, 1975.
Writ Refused June 23, 1975.
*601 Carville & Edrington, Jules A. Carville, III, LaPlace, for plaintiffs-appellees.
George T. Oubre and Don Bernard, Norco, for defendants-appellants.
Before SAMUEL, STOULIG and BEER, JJ.
SAMUEL, Judge.
Plaintiffs, the heirs of George A. Lasseigne, Sr., Palmyre Lasseigne Aycock and Esther Lasseigne Ory, filed this suit to quiet and confirm a tax title to certain immovable property located in St. John the Baptist Parish which the above named three persons had purchased for delinquent 1930 state and parish taxes. The November 28, 1931 tax deed was registered in the conveyance records of St. John the Baptist Parish on July 28, 1946. This suit was filed February 18, 1970.
Answer was filed on behalf of John Bazile, Clement Bazile, Emile Bazile, Ernest Bazile, Maurice Bazile and Daniel Bazile, in which they denied the allegations of the petition, averred they were the heirs of Adolph Clement (in whose name the property was assessed at the time of the tax sale), and further averred they, or their ancestors in title, were, were in continuous possession of the property from a time previous to the tax sale until 1966, when they were dispossessed by a possessory action. In addition, defendants reconvened to annul the tax sale and have themselves recognized as owners of the property by reason of thirty years acquisitive possession and on the further ground that the tax sale was not valid because legal formalities regarding notice to tax debtors had not been followed.
In response to the reconventional demand, plaintiffs filed an exception of no right of action based on the assertion that an action to annul a tax sale must be brought within five years of registry of the tax deed pursuant to Article 10, § 11 of the Louisiana Constitution of 1921. Plaintiffs additionally filed an exception of res judicata based on the possessory action brought to judgment in 1966, contending the reconventional demand involved identical causes of action, demands, property, and parties as the previous possessory action.
After a trial on the merits, there was judgment in favor of plaintiffs confirming *602 and quieting their title and recognizing them as the owners of the property in question.[1] The defendants have appealed.
Article 10, § 11 of the Constitution of 1921, as supplemented by R.S. 47:2228, provides for a peremptive period of five years from the date of recordation of a tax deed when no notice of the tax sale has been given to the tax debtor. When more than five years intervenes between the date of registery of the tax deed and the filing of suit to attack the tax sale, the five year peremptive period protects the rights of the tax purchaser.[2] A tax sale purchaser is not required to take corporal possession of the property. It is sufficient, expecially in cases of undeveloped land, for him to record his tax deed and thereby acquire civil or constructive possession. Upon his meeting these requirements, he is afforded the protection of the five year peremption.[3]
In the present case, the five year peremption provided by Article 10, § 11 of the Constitution of 1921 and R.S. 47:2228 pretermits a consideration of defendants' argument that they should be recognized as owners because of procedural defects in the tax sale. The deed was recorded in 1946, and the reconventional demand attacking the tax sale was not filed until 1972. Hence, more than five years have passed and defendants are precluded from attacking the tax sale because of procedural defects unless they have shown sufficient physical possession of the property to prevent the running of the five year peremptive period.[4]
The five year peremptive period does not run if the property sold at tax sale has been subject to open, actual and corporal possession by the tax debtor or his successors;[5] it does not run so long as they continue in such possession after the tax sale.[6] The type of possession required to prevent loss of property by the five year peremption must be open, actual, physical, and of such character as to be a continuous protest against the tax sale; it must also be of such character as to form the basis of the prescription of ten years.[7] While it is necessary to have corporal possession, accompanied by external and public signs clearly indicating the possessor's control and dominion over the property,[8] it is essential to examine the type and nature of the property in order to determine what type of possession is necessary to constitute open, real, and actual possession thereof.[9]
A greater degree of possession is required to acquire by thirty year prescription than is necessary to prevent the running *603 of the five year peremptive period.[10] Nevertheless, for the purpose of this opinion we can consider the proof of possession offered by defendants on both questions simultaneously in order to determine if they have produced sufficient proof of possession for either purpose.
Thirty year acquisitive prescription requires intent to possess as owner and not under some other tenure, such as a tenant. In addition there must be possession which is adverse to the true owner, and such possession must be continuous, uninterrupted, public and unequivocal.[11] Actual corporal possession is necessary to commence the running of prescription, and thirty years acquisitive prescription requires external and public signs to keep possession running.[12] The burden of proof is on the person claiming thirty years prescription to show when his possession began and that it continued as owner and adverse to the actual owner for the required thirty year period.[13]
We therefore examine the evidence offered in this case relative to defendants' contentions that they were in sufficient physical possession as to prevent the running of the five year peremptive period against them and that they are the owners of the property by virtue of the thirty years acquisitive prescription because they and their ancestors in title lived on and cultivated the land to such an extent as to exhibit their claim to ownership thereof to the entire world.
Plaintiffs' evidence consisted primarily of the testimony of a deputy tax collector, the clerk of court, and a deputy assessor. Their testimony established the basic facts of the tax sale, the adjudication and deed to George Lasseigne, Sr., and others, and the registry of the tax deed on July 29, 1946.
George Lasseigne, Jr., son of one of the tax purchasers, testified he knew personally that his father farmed the property in question until 1934, and from that date until 1956 the land was rented by his father to one E. Cambre. During 1956 and 1957 an oil lease was granted on the property by the Lasseigne interest, and since that date to the date of trial various named others have leased the property for farming or for the purpose of raising cattle. He testified that from the death of his father in 1956 he personally administered the family holdings and the property in litigation is a part of the total acreage which the Lasseigne family owns.
It is not necessary to enter into a protracted discussion of the vague and indefinite testimony offered by the defendants with regard to the times and dates of their alleged possession. Each testified he either lived on or visited the property at various times. There was some testimony to indicate that defendants' father farmed the ground for some time and various defendants kept small gardens on the property.
The strongest testimony on behalf of defendants was offered by John Bazile, the youngest defendant. He testified he was born on the tract in 1919 and resided there until February 23, 1942 when he was inducted into the armed forces. When he was released from service in 1945 he did not return to live on the property but instead lived at some other location in La-Place. He stated that off and on he and other members of his family maintained small gardens and that he looked upon the property as being owned by him. Defendants also presented two receipts to show the land had been rented. One was dated December 31, 1929, and showed that the father's second wife received $10 as rental on land which was not described in the receipt. The second receipt was for lease of *604 land for the years 1931 and 1932 signed by one O. F. Woodland. This receipt, likewise did not describe the land leased.
The court found as a fact that the defendants had not proved by a preponderance of the evidence that they had possessed the property continuously or in the manner required by law for acquisitive prescription of thirty years. The court had little doubt that the Baziles lived and farmed the land at intermittent times but concluded the evidence presented was vague and did not meet defendants' burden of proving continuous, uninterrupted, public and unequivocal possession as owner.
Our review of the testimony convinces us the trial court was correct in its findings and we agree that the defendants did not produce sufficient evidence to prove the possession necessary for either thirty years acquisitive prescription or for the purpose of preventing the running of the five year peremptive period after the recordation of the tax deed in 1946.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] The trial court also maintained plaintiffs' exception of res judicata insofar as it involved the previously determined possessory action between the parties.
[2] Cortinas v. Murray, 224 La. 686, 70 So.2d 589; King v. Moresi, 223 La. 54, 64 So.2d 841; Laventhal v. Lake Investment Corporation, La.App., 252 So.2d 521; Staring v. Grace, La.App., 97 So.2d 669.
[3] Cortinas v. Murray, supra, footnote 2; Laventhal v. Lake Investment Corporation, supra, footnote 2.
[4] Since we make this holding, it is not necessary for us to determine whether proper notice was made or received by defendants' ancestors in title at the time of the tax sale. However, we point out the record does not contain evidence sufficient to carry a defendant burden of proof necessary to overcome the prima facie correctness of a tax sale or to prove defective notice. See Meshell v. Bauer, 215 La. 619, 41 So.2d 237 and Walker v. Douglas, La.App., 12 So.2d 839.
[5] Board of Com'rs, etc. v. Sperling, 205 La. 494, 17 So.2d 720; Laventhal v. Lake Investment Corporation, supra, footnote 2; Kuhn v. Sandefur, La.App., 28 So.2d 515.
[6] Gibbs v. Roos, La.App., 178 So. 674.
[7] Laventhal v. Lake Investment Corporation, supra, footnote 2; see Board of Com'rs, etc. v. Sperling, supra, footnote 5; Kirn v. Pierce, La.App., 102 So.2d 90; Kuhn v. Sandefur, supra, footnote 5.
[8] Nixon v. English, 207 La. 906, 22 So.2d 266.
[9] P. M. Realty Co. v. Devitt, La.App., 199 So.2d 382.
[10] Meridian Land & Mineral Corporation v. Bagents, 211 La. 627, 30 So.2d 563.
[11] See Civil Code Art. 3500; McCluskey v. Meraux & Nunez, La.App., 186 So.2d 117.
[12] LSA-C.C. Art. 3501; McCluskey v. Meraux & Nunez, supra, footnote 11.
[13] Meridian Land & Mineral Corporation v. Bagents, supra, footnote 10.