892 So.2d 151 (2005)
JOSHUA INVESTMENT CORPORATION, Plaintiff-Appellant
v.
HOME SALES COUNSELING, INC., Mark L. Montgomery and Carolyn Doughty Montgomery, Defendants-Appellees.
No. 39,251-CA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 2005.
Rehearing Denied February 24, 2005.
*153 Shuey Smith, L.L.C. by Richard E. Hiller, Shreveport, for Plaintiff-Appellant.
James W. Hall, Bossier City, for Defendants-Appellees, Home Sales Counseling Inc., Mark L. Montgomery and Carolyn Doughty Montgomery.
Watson, McMillin & Harrison, L.L.P. by William Brooks Watson, William Michael Street, Monroe, for Defendant-Appellee, Dennis Joslin.
Before BROWN, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
Joshua Investment Corp. appeals the judgment of the 26th Judicial District Court, Parish of Bossier, State of Louisiana in favor of Home Sales Counseling, Inc. ("Home Sales"), Mark L. Montgomery, Carolyn Doughty Montgomery (collectively, "Montgomery"), and Dennis Joslin. Home Sales and Montgomery answer the appeal. For the following reasons, we affirm in part and reverse in part.

FACTS
On August 5, 1994, Joshua Investment Corp. ("Joshua") filed a Petition to Rescind Tax Sale against Montgomery and Home Sales. Therein, Joshua sought to have annulled two tax sale deeds from Bossier Parish and Bossier City, respectively, to Montgomery, as well as a subsequent credit sale deed by Montgomery to Home Sales. Said documents all related to the following described property:
LOT TEN (10), GREENACRES SUBDIVISION, UNIT NO. NINE (9), a subdivision of Bossier Parish, Louisiana, as per plat recorded in Book 399, Page 473, of the Conveyance Records of Bossier Parish, Louisiana, together with all buildings and improvements located thereon
(the "property").
The facts underlying the lawsuit are undisputed by the parties. They are as follows:
1) Joshua acquired title to the property on June 1, 1985, by Cash Sale Deed from Bank of Commerce.
2) Joshua encumbered the property (as well as other various properties) by a Collateral Mortgage payable to any future holder dated May 2, 1985. On that same date, Joshua executed a demand note in favor of The Bank of Commerce in Shreveport in the original principal amount of $175,000.00 (the "hand note"). This debt was secured by the pledge of the collateral mortgage note in the original principal amount of $200,000.00, again dated May 2, 1985. That collateral mortgage note was paraphed "Ne Varietur" to identify with the collateral mortgage, which described and listed as security the property. Said collateral mortgage was duly recorded in the Bossier Parish public records (collectively, all documents are the "Joshua Investment Loan Package"). Both the hand note and the collateral mortgage note were payable on demand.
3) Ultimately, The Bank of Commerce failed and the FDIC was appointed as receiver. On October 2, 1996 (after some intervening assignments), the FDIC transferred the Joshua Investment Loan Package to Joslin.
4) Joshua filed for protection under Chapter 11 Bankruptcy on March *154 10, 1987, under Docket Number 87BK-00790.
5) Montgomery acquired title to the property at tax sale for the 1987 parish taxes by tax sale deed recorded July 8, 1988.
6) Montgomery acquired title to the property at tax sale for the 1987 city taxes by tax sale deed recorded July 8, 1988.
7) The Chapter 11 bankruptcy of Joshua was dismissed on August 8, 1989.
8) Notice of the tax sale was issued by Montgomery to Joshua on August 27, 1991.
9) A monition suit was filed by Montgomery to confirm and homologate title to the property acquired pursuant to the tax sale, on July 1, 1992, and after publication of legal notice judgment was rendered August 12, 1992.
10) Montgomery transferred title to the property to Homes Sales by Credit Sale Deed recorded August 17, 1992.
11) Montgomery and/or Home Sales paid the parish and city taxes on the property from 1987 through 2002, in the total amount of $13,883.12, subject to additional amounts which may accrue subsequent to the date of trial.
12) Montgomery and/or Homes Sales paid for upkeep, maintenance and repairs of the property from 1992 through September 1, 2003, in the total amount of $26,407.11, subject to additional amounts which may have accrued subsequent to the trial.
13) Montgomery and/or Homes Sales paid for fire insurance coverage on the property for 1994 through 2000 in the amount of $1,691.00, subject to additional amounts which may have accrued subsequent to the trial.
14) At trial, Mark Montgomery testified that he maintained a separate liability policy on the property from 1994 through 2003, in the amount of $250.00 per year, for a total amount of $2,500.00, subject to additional amounts which may have accrued subsequent to the trial.
15) Montgomery and/or Homes Sales received rental income on the property from March 1994 through September 2003 in the amount of $79,432.59, subject to additional amounts which may have accrued subsequent to the trial.
16) At trial, Mark Montgomery testified that his rental management company managed this rental property, collected all rental payments, procured new tenants, and made arrangements for all repairs and maintenance to the property, without charging Montgomery for any management fees; however, the usual management fee charged to property owners is 15% of the gross rental payments received.
On August 5, 1994, Joshua filed its lawsuit seeking to have rescinded the tax sale deeds from Joshua to Montgomery and the subsequent credit sale deed from Montgomery to Home Sales. Joshua also sought to be recognized as the owner of the property. Subsequently, Montgomery and Home Sales sought to have the FDIC added to the lawsuit claiming it to be an indispensable party to the litigation. An order was signed by the trial court so doing. Later, when it was discovered that the FDIC had assigned its interest in the Joshua Investment Loan Package to Joslin, Joslin was substituted for the FDIC in the lawsuit. Joslin then filed its own reconventional *155 demand, seeking an in rem judgment against the property.
Ultimately, the trial court ruled in favor of Home Sales and Montgomery and against Joshua. It upheld the validity of the tax sales to Montgomery and the subsequent credit sale transfer by Montgomery to Home Sales. Additionally, the trial court also ruled in favor of Joslin, maintaining the validity of the collateral mortgage documents held by Joslin and secured by a valid collateral mortgage on the property. This appeal by Joshua ensued, and Home Sales and Montgomery have answered the appeal.

DISCUSSION

The validity of the tax sales
On appeal, Joshua raises five assignments of error  three of which are interrelated and address the validity of the tax sales. First, Joshua maintains that the trial court erred in deeming the tax sales as merely voidable, instead of void ab initio. Joshua also maintains that the trial court erred in determining that the Montgomerys' monition lawsuit served to cure any defects in the tax sales themselves. And finally, Joshua generally argues that the trial court erred in failing to annul the tax sale deeds and allowing Joshua to redeem the property, after paying the applicable redemption amount to Montgomery and Home Sales.
Initially, we note that a tax purchaser becomes the owner of the property, subject to the right of the tax debtor to redeem the property within three years, which did not occur in this case, or to file suit to have the tax sale declared null within five years, which did. See La. Const. art. 7 § 25. As to this suit to annul the tax sales, Home Sales and Montgomery have raised, for the first time and in this court, their peremptory exception of prescription. In their exception, Montgomery and Home Sales point out that the tax sale deed from the City of Bossier City was filed on July 8, 1988, and that Joshua's petition to rescind the tax sales was not filed until August 5, 1994  clearly more than five years after the recordation of the deed. Thus, as maintained by Montgomery and Home Sales, Joshua's time had elapsed to bring any claims against Montgomery attacking the tax sales.
First, we must determine whether the peremptory exception of prescription is properly before this court. Louisiana C.C.P. art. 2163 states:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.
In this case, Montgomery's exception was pleaded prior to the case's submission for decision, so we must next determine whether proof of the ground of the exception appears of record.
Pursuant to La. Const. art. 7 § 25(C):
No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given.
Thus, under La. Const. art. 7, § 25(C), tax sales are subject to a five-year peremptive period after which certain irregularities of *156 the sale can no longer be asserted. Cressionnie v. Intrepid, Inc., XXXX-XXXX (La.App. 1st Cir.05/14/04), 879 So.2d 736, 740, citing Catania v. Stuart, 512 So.2d 1189, 1191 (La.App. 1st Cir.1987), writ denied, 508 So.2d 71 (La.1987); Bank One Louisiana, N.A. v. Gray, 34,802 (La.App. 2nd Cir.06/20/01), 792 So.2d 29, 30.
However, according to the jurisprudence, this five year period does not run if the tax debtor retains corporeal possession of the property. Colvin v. Ferguson, 564 So.2d 775 (La.App. 2d Cir.1990). More importantly, statutory law also mandates that prescription does not run against a tax debtor-owner until he has been dispossessed of the property. See La. R.S. 47:2226 and 47:2228. "The possession required to prevent the current of such prescription must be open, actual and physical; of such character as to be in effect a continuous protest against the tax sale; it must be of such character as to form the basis of the prescription of ten (10) years." Kuhn v. Sandefur, 28 So.2d 515, 518 (La.App. 2d Cir.1946).
Here, Joshua alleged in its petition that it had maintained constant possession of the property up until 1994. At trial, Lee Harville, president of Joshua, testified that Joshua rented the property until sometime in 1994, when Harville was notified that Montgomery was taking possession. The record is not clear of the precise date. However, the evidence of record reflects that not until early 1994 did Montgomery begin collecting rent, making repairs, and incurring other expenses on the property. In fact, Montgomery admitted at trial that he did not take possession of the property until February or March, 1994. Therefore, we conclude that Joshua maintained possession of the property sufficient to interrupt prescription pursuant to La. R.S. 47:2226 and 47:2228, and its claims asserted against Montgomery and Home Sales in its petition were timely filed. The exception of prescription by Montgomery and Home Sales is hereby denied.
Having determined that Joshua's petition to rescind the tax sales was timely filed, it is proper to consider the assignments of error raised by Joshua regarding the merits of its lawsuit. First, we must consider whether the trial court erred in deeming the tax sales merely voidable instead of void ab initio as argued by Joshua. Notably, Black's Law Dictionary (8th ed.2004) defines voidable as "[v]alid until annulled; esp., (of a contract) capable of being affirmed or rejected at the option of one of the parties. This term describes a valid act that may be voided rather than an invalid act that may be ratified."
Joshua points out that on March 10, 1987, it filed a voluntary petition in bankruptcy seeking Chapter 11 protection. The property was listed as one of the assets, and the parties agreed at trial that the property was part of the bankruptcy estate. Joshua states that while its bankruptcy proceeding was pending, the tax sales occurred on June 7 and July 8, 1988, while it was under the protection of 11 U.S.C. § 362's stay provisions. Thus, Joshua contends that because the tax sales took place during the bankruptcy proceeding, they are absolutely null and void. These were the only grounds alleged by Joshua for the rescission of the tax sales. The trial court, however, found the tax sales to be merely voidable and that Montgomery was protected as a good-faith purchaser who did not have notice of Joshua's bankruptcy status at the time of the sales. Joshua argues this finding to be in error and it points to a prior decision of this court, Gulfco Finance of Farmerville, Inc. v. McCormick, 577 So.2d 778 (La.App. 2d Cir.1991). Whereas the trial court considered Gulfco, in reaching its conclusion, it ultimately relied upon federal jurisprudence *157 to interpret the applicable federal statute in question. Such reasoning, and the trial court's resultant final determination, were not in error.
Primarily, we note the trial court was correct in following federal jurisprudence for this question of federal bankruptcy law. Routinely, the federal courts defer to state court holdings for issues regarding state statutory law. Thus, in this case addressing a question of federal bankruptcy law, such deference by the state trial court (and now, state appeal court) to federal jurisprudence was proper. In so finding, we recognize that we call into question a previous opinion of this court, i.e., Gulfco, which Joshua maintains is controlling on this issue.
There is conflicting jurisprudence, both federal and state, on whether a transaction which violates a bankruptcy automatic stay is void or voidable. Contrary to this court's previous holding in Gulfco, the United States Court of Appeals for the Fifth Circuit has taken the position that such transactions are merely voidable. See Sikes v. Global Marine, Inc., 881 F.2d 176, 178 (5th Cir.1989). In the case sub judice, the trial court relied particularly on Sikes to determine that the tax sales of the property were voidable and not void ab initio. In Sikes, the court determined that "... the better reasoned rule characterizes acts taken in violation of the automatic stay as voidable rather than void. We agree that `the characterization of every violation of [11 U.S.C.] section 362 as being absolutely void is inaccurate and overly broad'" (citation omitted).
Although the federal Fifth Circuit's determination on the issue is contrary to that stated in Gulfco, nevertheless, we conclude that the trial court properly applied the federal jurisprudence on this question of federal bankruptcy law. Notably, the Gulfco pronouncement that actions taken in violation of a bankruptcy stay are void ab initio relied upon Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). Kalb was addressed head-on by the Sikes court, which reasoned that since 1940, when Kalb had been decided, changes had occurred in the bankruptcy law regarding automatic stays, which supported a different conclusion regarding violation of same. So considering, we agree with the trial court's conclusion that the tax sales of the property were "merely voidable" and not void ab initio.
Joshua also argues that the trial court erred in its determination that Montgomery's monition lawsuit cured any defects in the tax sales. The trial court deemed the monition lawsuit valid, and concluded that it served to cure any defects in the underlying tax sales to Montgomery. However, as to this issue, Joshua states it never received notice of the monition lawsuit and argues that said lawsuit was invalid pursuant to Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Although we agree that the trial court erred in its conclusion that the monition lawsuit cured any defects in the tax sales, our determination is based on the defective procedure employed by Montgomery based on the applicable statutory law and jurisprudence.
Monition is a procedure by which purchasers of property at sheriffs' sales and other sales "made by the authority of justice" may protect themselves from eviction of the property so purchased, or from any responsibility as possessors. La. R.S. 13:4941. The purpose of monition is to confirm or homologate the judicial sale by showing that the sale was properly advertised, the property was correctly described, and the price was actually paid. La. R.S. 13:4945. The judgment of the *158 court confirming and homologating the sale has the force of res judicata. La. R.S. 13:4947. An absolutely null judgment is not res judicata and may be collaterally attacked. In re Raz, XXXX-XXXX (La.App. 1st Cir.02/23/04), 871 So.2d 363, 367, citing Corcoran v. Gauthier, 97-0516 (La.App. 4th Cir.01/07/98), 705 So.2d 1233, 1236, writ denied, 98-0342 (La.03/27/98), 716 So.2d 888; see also LaBove v. Theriot, 597 So.2d 1007, 1011 (La.1992).
Here, Montgomery followed this procedure of a monition lawsuit. On July 1, 1992, he filed the monition lawsuit, the property was judicially advertised, and judgment quieting title was rendered on August 12, 1992. Joshua was not named or served with the petition. However, the specific procedure for quieting tax titles is set forth in La. R.S. 47:2228, which states as follows:
After the lapse of three years from the date of recording the tax deed in the conveyance records of the parish where such property is situated, the purchaser, his heirs or assigns, may institute suit by petition and citation as in ordinary actions against the former proprietor or proprietors of the property, in which petition must appear a description of the property, mention of the time and place of the sale and name of officer who made same, reference to page of record book and date of recording tax deed, notice that petitioner is owner of the said property by virtue of said tax sale, and notice that the title will be confirmed unless a proceeding to annul is instituted within six months from date of service of the petition and citation. This suit shall be brought in the parish where the property is situated unless it lies in two or more parishes, in which case this suit may be instituted in either of such parishes. The petition and citation shall be served as in ordinary suits; provided, that if the former proprietor be a nonresident of the state, or unknown, or his residence be unknown, the court shall appoint a curator ad hoc to represent him and receive service, and said curator shall receive for his services a reasonable fee to be fixed by the court in each suit, the same to be taxed as costs of suit. After the lapse of six months from the date of service of petition and citation, if no proceeding to annul the sale has been instituted, judgment shall be rendered quieting and confirming the title. (Emphasis added).
The First Circuit recently discussed in depth the conflicts between La. R.S. 47:2228 and La. R.S. 13:4941 et seq., quoting Gunter v. Moore, XXXX-XXXX (La.App. 3rd Cir.02/05/03), 838 So.2d 118, and concluded that:
[W]e find that the history of this statutory scheme reveals that the legislature intended that the delay for bringing a monition proceeding, as an alternative to a suit to quiet tax titles, should coincide with the five-year prescriptive, as opposed to the three-year redemption period; and La. R.S. 13:4951, simply, was never amended to reflect the prescriptive period after it had been amended in the Constitution.
Additionally, we must presume that the legislature intends to achieve a consistent body of law. Therefore, the only logical explanation is that the legislature meant for the monition proceeding to be available as an alternative to quieting a tax title, only, after the prescriptive period has passed. Moreover, La. R.S. 47:2228, providing for the five-year delay period for monition proceedings, was enacted after La. R.S. 13:4951. Thus, La. R.S. 47:2228 supersedes La. R.S. 13:4951. When two statutes are so blatantly *159 contradictory, as these two, the later statute must govern.
Raz, supra at 368. Thus, the Raz court concluded that the judgment of monition in that case was null. We agree, and adopting the reasoning set forth in Gunter, supra and Raz, supra, conclude that the monition judgment in favor of Montgomery was prematurely obtained and is an absolute nullity. Resultantly, the monition lawsuit, because it is null, failed to cure any defects that may have existed in the underlying tax sales to Montgomery. On this point, we reverse the trial court.
With those issues decided, we are left with this final question: if the tax sales to Montgomery were voidable because they were transactions violative of Joshua's bankruptcy, and if the monition lawsuit was procedurally inadequate and, thus, failed to cure any underlying defects in the tax sales, should the tax sales be rescinded, and Montgomery and Home Sales reimbursed for prior years taxes, interest, and expenses on the property? Joshua argues yes, and raises this issue in its fifth and final assignment of error before us.
The burden of invalidating a tax sale is placed on the party attacking the sale. Verret v. Norwood, 311 So.2d 86 (La.App. 3rd Cir.1975), writ denied, 313 So.2d 842 (La.1975), citing Staring v. Grace, 97 So.2d 669 (La.App. 1st Cir.1957); Stone v. Kimball's Heirs, 199 La. 240, 5 So.2d 758 (1942); Federal Land Bank of New Orleans v. Scallan, 179 La. 636, 154 So. 632 (1934). This is based on Louisiana's public policy favoring the validity of tax sales. Staring v. Grace, supra. In this case, Joshua argues that the tax sales were void ab initio, because they violated the automatic stay in place by virtue of its bankruptcy that occurred almost twenty years ago; however, we have concluded that not to be the case. As we have determined that the tax sales were merely voidable, they are, by definition, valid until Joshua can prove why they should be annulled. There are no allegations or evidence that Joshua failed to receive notice of the tax sales or that the tax sales were otherwise procedurally flawed. Notably, Joshua had notice of the tax bills and of the tax sales. More importantly, during the course of the bankruptcy, Joshua had given up any ownership interest it had in th e property when it allowed the lifting of the automatic stay upon the FDIC's motion.[1] Joshua has simply failed to present any evidence why these otherwise valid sales should be annulled. Thus, Joshua's final assignment of error is without merit, and, resultantly, we conclude that the tax sales to Montgomery and the subsequent credit sale deed to Home Sales were valid.

Joslin's Claims in the Property
Having determined that Joshua has no ownership interest in the property, we will now address the issues raised by Montgomery and Home Sales in this appeal. Montgomery and Home Sales adopt the argument made by Joshua that the trial court erred in finding as legally sufficient the assignment documentation presented by Joslin to prove his position as assignee of the original mortgage-holder/assignee. It is maintained that Joslin failed to present an adequate "chain of title" to prove ownership of the Joshua Investment Loan Package. However, we consider this issue moot as a result of our conclusion, as explained herein, that any in rem security interest Joslin might have had in the property *160 fails due to the prescription of the collateral mortgage note.
Montgomery and Home Sales join with Joshua in arguing that the trial court erred in its conclusion that the continuous pledge of the collateral mortgage note served as a constant acknowledgment of the debt when the hand note was lost, and thereby served to continually interrupt the applicable prescriptive period for an action to enforce the hand note. Montgomery and Home Sales also argue that the collateral mortgage documents themselves have prescribed.[2] Notably, in this instance, it was the hand note that was lost, not the collateral mortgage note, the original of which was in Joslin's possession. We agree with the trial court that, generally, the continuous pledge of the collateral mortgage note serves to interrupt prescription of the underlying indebtedness evidenced by the hand note, despite that fact that the hand note might be lost. However, the trial court erred in its final determination that Joslin continued to have a security interest in the property, as explained herein.
The collateral mortgage note and the hand note initially were due on demand and were subject to a liberative prescriptive period of five years that commenced in 1985.[3] Prescription on a note payable on demand runs from the date of execution of the note. La. C.C. art. 3498; Security Nat. Partners, Limited Partnership v. Baxley, 37,747 (La.App.2d Cir.10/29/03), 859 So.2d 890; McGill v. Thigpen, 34,386 (La.App.2d Cir.02/28/01), 780 So.2d 1224. Here, the hand note and the collateral mortgage note were both dated May 2, 1985. Thus, on their face both the hand note and collateral mortgage note have prescribed. The record reflects that no payment was made on the hand note, nor did either note contain a written acknowledgment evidencing Joshua's continuing acknowledgment of the debt. See McGill, supra at 1228. Upon the prescription of a collateral mortgage note secured by a mortgage, no outstanding mortgage remains against the property recited in the mortgage. McGill, supra, citing Kaplan v. University Lake Corp., 381 So.2d 385 (La.1979). Thus, Joslin is barred from the relief sought in his reconventional demand, that being the seizure and sale of the property by virtue of the collateral mortgage. And whereas Joshua, Montgomery and Home Sales argue that Joslin has no security interest in the property because the underlying indebtedness has prescribed and is unenforceable, we reach the same conclusion for a different reason: the security interest fails because the related collateral mortgage note has prescribed. And whereas Joslin might have been able to enforce Joshua's obligation under the hand note, see McGill, supra, it sought only an in rem judgment against the property.[4]

*161 CONCLUSION
For the foregoing reasons, we deny the exception of prescription filed by Montgomery and Home Sales. Furthermore, as explained herein, the tax sales to Montgomery are not rescinded and are valid, and we likewise deem the credit sale by Montgomery to Home Sales to be valid. Additionally, we agree with the trial court's reasoning that the promissory note by Joshua now held by Joslin has not prescribed; however, for the reasons stated, Joslin has no security interest in the property. Costs of this appeal are assessed to Joshua Investment Corporation.
AFFIRMED IN PART; REVERSED IN PART.

APPLICATION FOR REHEARING
Before BROWN, CARAWAY, PEATROSS, DREW, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] For reasons unknown, although the FDIC was successful in having Joshua's bankruptcy stay lifted, it never proceeded with its foreclosure action on the property.
[2] Notably, the issue of prescription of the hand note and the collateral mortgage note was specifically asserted against Joslin's reconventional demand, and it was addressed specifically by the trial court in the trial on the case merits.
[3] Considering the involvement of the FDIC in this case, the federal prescriptive period under 12 U.S.C. § 1821(14) should also be considered. Under the federal statute, the prescriptive period for the collateral mortgage note would be six years from the date the FDIC was appointed receiver for The Bank of Commerce, the original maker and mortgagee. Although that precise date is unknown and was never made part of the record, it is undisputed that the FDIC was appointed receiver prior to 1988, six years from which would have been in 1994. Joslin did not seek to enforce its rights in the collateral mortgage until July 18, 1997.
[4] Presumably, Joshua's debt under the hand note was addressed in its bankruptcy plan (which is not part of the record), because Joslin acknowledged it was unable to enforce Joshua's original obligation other than by pursuing Joslin's in rem rights on the property.