ELLIS, Judge.
On July 20, 1931 by act recorded July 23, 1931 the Sheriff of the parish of East Baton Rouge sold to R. J. Hummell for delinquent taxes property assessed in the name of Penny Jackson described as follows: Twenty-Seven (27) acres, being an undivided one-third (%) interest in eighty-one (81) acres, known as the Kirkland tract, being in Section 68, Township 7 South, Range 1 East, bounded North by Joor, East by portion of said tract, South by Newman, and West by lands of -Curtis.
On the 17th day of October, 1938 Hum-mell sold “without any warranty of title or return of purchase price” the property to Lewis M. Kaufman, plaintiff herein.
On December 1, 1950 plaintiff filed this proceeding to confirm and quiet the tax title under the provisions of LSA-R.S. 47: 2228 claiming the benefit of the peremption or prescription of five years as contained in Section 11 of Article 10 of the -Constitution of 1921. The plaintiff alleged that Penny Jackson acquired the property by purported will from James Jackson but also alleged that the will and succession proceedings were lost.
While the defendants are Penny Jackson and her alleged husband, James Jackson, if living, and if not their heirs, it is clearly shown that James Jackson and Penny Chase Jackson were both dead. The defendants denied the main allegations of plaintiff’s petition and attacked the tax sale on various grounds, none of which can be considered or could prevail if the plea of prescription of five years under the Constitutional provision is sustained.
Exceptions of no right and no cause of action were filed but were referred to the merits by the District Judge and he only considered the plea of prescription in view of the fact that the defendants alleged that they had remained in actual possession of the property which, if true, would defeat the plea of prescription.
The District Court sustained the plea of prescription after hearing evidence on the question of possession, and it is from this judgment that the defendants have appealed.
While the Lower Court took up each of the grounds raised by the defendants attacking the validity of the tax sale, it is unnecessary to consider them other than to *40 say that they are ineffectual in this case in the face of the plea of prescription.
On the question of possession, the facts as shown by the record are that James Jackson died in 1912, at which time he was living with and had married Penny Chase. While the validity of this marriage is attacked, we are not concerned with it except as explanation of the acquisition and assessment of the property to Penny 'Chase Jackson. In the record, also, is a divorce proceeding filed by James Jackson against his wife, Delphine Jackson, and reconven-tional demand by Delphine Jackson on the ground of adultery in that she alleged James Jackson was living in open concubinage with Penny Chase. There is testimony in the record but there was never a judgment rendered in this divorce proceeding, therefore, at the date of his marriage to Penny Chase he was not divorced from Delphine Jackson. However, it is alleged that James Jackson left a noncupative will by public act in which he bequeathed to Penny Chase one-third of his property which included his interest in the 81 acres which was community property between James Jackson and Delphine Jackson, his prior undivorced wife.
The record fails to show that Penny Chase, after the death of James Jackson, continued to live on the property, and the succession is not in the record although the notes of evidence show it was offered, nor is the will or any copy. In 1916 Penny Chase Jackson purportedly sold to Ronald-son & Puckett Company, Ltd. of East Baton Rouge Parish the undivided % interest allegedly willed to her by James Jackson in the 81 acres, and in 1918 Ronaldson & Puckett Company, Ltd., resold to Penny Jackson an undivided % interest in and to the 81 acres of land. This title does not attempt to designate her interest as 27 acres. We do not find in the record where this property was assessed to Penny Jackson until 1930 and then it is described as shown in the tax sale.
R. J. Hummell became the purchaser at the tax sale in 1931 and he apparently made no effort to take possession of the property, but in 1938 he transferred it for $100 consideration to the plaintiff, Lewis Kaufman, who owned 50 acres adjoining the 81 acre tract. Kaufman thought that he was getting 27 acres of the 81 acre tract which adj oined .his 50 acre tract and was bounded on the east by a creek. Neither Hummell nor Kaufman ever notified any of the defendants of the tax sale but it is shown that he had an arrangement with a colored man by the name of John Blount to take care of his cattle and in return Blount could farm his land free and keep whatever he made. It is shown that plaintiff furnished some wire which was used to fence up a garden patch of approximately one acre next to his 50 acre tract, and also that after Blount died he had an arrangement with Cleveland Clark-to look after his cattle and in return Clark was to' have whatever he made on Kaufman’s land. Aside from the small garden patch that was fenced up these tenants did farm some patches on the 27 acre tract. There was no division fence between the 27 acres Kaufman thought he had acquired and the remainder of the 81 acre tract.
The testimony on behalf of the defendants shows that they personally were not disturbed by the tax sale; that there were two small houses on this 81 acre tract of land east of the creek and after James Jackson died his son, Hosea, continued to live on the property and farm it. Hosea Jackson had three children, two of whom were living at the date of the trial and one of whom, Freddie Jackson, testified that Hosea Jackson moved on the property in 1915 and with his family was living there in 1930 and 1931 and remained on the property until the latter part of 1936. In 1932 a cousin, Elizabeth Jackson, and her husband, Albert Ross, also moved on the property and remained on it until 1950, and when they moved in 1950 they left some things in the house and a horse on the land. When Elizabeth Jaekson and Albert Ross left a niece of hers and her husband moved on the property and remained there from approximately the middle of January 1950 until June 1950; that after they moved Frank Duncan came on the property in August and remained until January 1951.
It is true that Elizabeth Jackson Ross and Freddie Jackson heard of the alleged tax *41 sale, and it is also true that after 1931 the defendants were assessed with 54 acres of the 81 acre tract and the plaintiff with the remaining 27 acres, and it is further true that from what they heard they thought they had iost the 27 acres across the creek and adjoining Kaufman’s 50 acres, however, during all the time they lived there they farmed and lived not only on the 54 acres hut also farmed and raised corn, peas and potatoes across the creek on the 27 acres.
The District Judge is his opinion states that defendants’ “acts of possession were confined to the 54 acres east of the creek” and that “throughout the years in question defendants respected plaintiff’s right to exercise such acts of possession as he desired with reference to this 27 acres.” Clearly he is in error, as Elizabeth Ross Jackson testified without contradiction as follows:
“Q. And that was to keep them from getting into Mr. Kaufman’s crops on the other side of the creek, is that right? A. Well I had a little place on the other side too, and that would keep them from getting over there.”
* * * * * *
“Q. Now in occupying this property, did you occupy it for your account and for the account of the heirs? A. Yes, sir.
“Q. I believe you stated you did some farming on that section across the creek? A. I did.
“Q. What did you plant over there? A. Potatoes and corn, and one year across on this island Freddie Jackson mentioned, about the second year I went there, I raised cotton.”
******
“Q. Did you ever have anything on the same side of the creek that Mr, Kaufman has? A. Yes, sir.
“Q. What? A. Potatoes, corn and peanuts.
“Q. About how many acres did you cultivate on the side of the creek Mr. Kaufman’s property is on? A. About four or five acres.
“Q. Now how far was this from the garden that Mr. Kaufman was cultivating?
A. It was nearly adjoining, just a few yards from where I was cultivating.”
* * * * * *
“Q. When was it that you had that potato patch on the west side of the creek? A. I had one last year.”
The case was tried on March 2nd and May 1, 1951 and, therefore, Elizabeth Ross had a potato patch on the west side of the creek, that is on the 27 acres, in the year 1950.
It is shown that after the crops were made in the fall of the year the fence was taken down between Kaufman’s 50 acres and the 81 acre tract and the cattle of the defendants and the plaintiff roamed together on both tracts of land.
The plaintiff offered the testimony of Cleveland Clark, his hired man or tenant, who testified that he had been on Kaufman’s place eight years and that he fenced and farmed a little garden of approximately one acre adjoining Kaufman’s property. He testified that he put this fence up in 1950 with wire that was furnished by Kaufman, and he further testified:
“Q. You just fenced the garden on your own ? A. On my own, yes, sir.”
This witness testified that Mr. Kaufman did not know anything about his farming any part of the 27 acre tract and had not sent him over there and did not even know that he was working this patch.
There is not the least question about the fact that Kaufman never exercised the least possession insofar as the 54 acres was concerned. Of course, the question is the possession retained or exercised by the defendants, but Kaufman’s possession did not oust the defendants. They continued on this property as they had always apparently done in the past, and while it is true that they heard they had lost part of the property at tax sale, they still farmed that portion which Kaufman thought he had acquired at tax sale. The most favorable finding for the plaintiff would be to say that he and the defendants had a dual occupancy of the 27 acres west of the creek and adjoining plaintiff’s property. The defendants remained in undisputed possession of the greater portion of the tract and, *42 for that matter, their possession as to the 27 acres was never disputed by Kaufman, and this land was used by the defendants.
The defendants remained in actual corporeal and undisputed possession of all of the 54 acres of which Kaufman now claims an undivided % interest and exercise at least equal possession with Kaufman of the 27 acre tract. The defendants have retained and been in actual and open possession of the 81 acres of land prior to and subsequent to the tax sale, and the mere fact that they heard and probably might have thought that they lost a portion of their property at the tax sale should not estop them in the face of the actual retention of possession from urging such a defense. No one questioned their possession nor took any action that divested them of their possession from the time of the tax sale in 1931 up until December 1, 1950 when the present suit was filed.
It is, therefore, ordered that the judgment of the District Court be reversed and the case remanded to the District Court for further proceedings in accordance with law.