LE BLANC, Justice.
This is a proceeding brought pursuant to the provisions of the LSA-R.S. 47:2228 and Section 11 of Article 10 of the State Constitution to have confirmed to the plaintiff the title to an undivided interest in a certain property in the Parish of East Baton Rouge which was acquired by his vendor, R. J. Hummel, at a tax sale on July 20, 1931, the tax deed having been recorded in the Conveyance Records of that Parish on July 23, 1931. All formalities prescribed by the statute under which the proceeding *960 was instituted appear to have been carefully observed.
The property involved is described in the plaintiff’s petition as “Twenty-Seven (27) acres, being an undivided one-third (%) interest in eighty-one (81) acres, known as the Kirkland Tract, being in Section 68, Township 7 South, Range 1 East, bounded North by Joor, East by portion of said tract, South by Newman, and West by lands of Curtis.”
The action was directed against the tax debtor, Penny Jackson, in whose name the property was assessed at the time it was sold for the unpaid taxes for the year 1930, but in accordance with the requirements of the statute all of the other proprietors or co-owners of the tract of land were joined as parties defendant. James Jackson and Penny Chase Jackson had died long prior to the filing of this proceeding and their alleged heirs are the defendants in the suit.
They appeared either through counsel or a curator ad hoc and answered, denying the allegations of plaintiff’s petition. They reconvened and attacked the tax sale from which plaintiff derives his title on several grounds. Plaintiff who then became defendant in reconvention, filed exceptions of no cattse or right of action and also pleas of prescription or peremption. The plea of prescription of five years under Section 11 of Article 10 of the State Constitution relied on by the plaintiff, defendant in reconvention, presents the principal, if not the controlling, issue in the case since all of the various grounds of attack set out by the defendants in their reconventional demand need not be considered if the plea is well founded and should prevail.
After hearing testimony and considering all the evidence in the case the trial judge maintained the plea of prescription and rendered judgment in favor' of the plaintiff confirming his title to the property. On appeal to the Court of Appeal for the First Circuit, the judgment was reversed and the case remanded to the district court for fur ther proceedings. 55 So.2d 39. Writs were applied for to this court and granted and the case is now before us to review the judgment of the Court of Appeal.
On October 17, 1938 the plaintiff acquired from R. J. Hummel, by a deed executed before a Notary Public of the Parish of East Baton Rouge, the undivided one-third interest in the property involved herein, reference being made in the deed to the fact that it was the same parcel of land as had been acquired by the vendor by act of tax sale on June 20, 1931 and duly recorded in the Conveyance Records of the Parish of East Baton Rouge on July 23, 1931. In the deed the property is described as being “A certain parcel of land located in the Ninth Ward of the Parish of East Baton Rouge, State of Louisiana, and being an Undivided One-Third of Eighty-one (81) acres, and being located in Section Sixty-eight (68), Township Seven (7) South, Range 1 (1) East, said undivided twenty-seven acres being bounded North by Joor, *962 East by portion of said eighty-one undivided acres, and West by lands of Curtis, He ^ ”
The entire 81 acre tract was acquired by James Jackson, during the community of acquets and gains which existed between himself and his former wife, Delphine Jackson. In 1912, James Jackson died, leaving a nuncupative will by public apt in which he bequeathed to Penny Chase, who was living with him as his wife, one-third of his property which included his interest in the 81 acres of land.
As pointed out in the opinion of the Court of Appeal the record fails to show that Penny Chase, after the death of James Jackson, continued to live on the property. Although it was offered in evidence, the succession record of James Jackson is not found in the transcript, nor is his will or any copy thereof. It appears however that in 1916 Penny Chase Jackson purportedly sold to Ronaldson & Puckett Company, Ltd. of the Parish of East Baton Rouge, the undivided one-third interest in the 81 acre tract of land allegedly willed to her by James Jackson and in 1918 Ronaldson & Puckett Company, Ltd., resold to her the same undivided interest. That deed does not designate her interest as being any particular 27 of the 81 acres of land. The ■record does not reveal anything further concerning Penny Jackson’s connection with the property until the year 1930 when it was assessed to her and the assessment roll of East Baton Rouge Parish carried it under the description as given in the tax sale to Hummel, of date, July 20, 1931.
After Hummel had acquired the property he apparently made no effort to exercise possession over it in any manner, either as the purchaser of a 27 acre tract of land or as the owner of an undivided one-third interest in a larger tract.
At the time that the plaintiff, Lewis M. Kaufman, acquired the property from Hummel, he owned 50 acres of land immediately adjacent to the 81 acre tract on the west and it is clear from the testimony that he was of the impression that when he made the purchase from Hummel that he was getting 27 acres of land next to his own. The fact also that these 27 acres were separated from the remaining 54 acres of the 81 acre tract by a small creek may have strengthened the impression he had. He later found out, however, that what he had purchased from Hummel was an undivided one-third interest in the whole tract of 81 acres.
Neither Hummel nor Kaufman ever gave notice of the tax sale to any of the defendants but the tax deed to Hummel was duly recorded in the Conveyance records of East Baton Rouge Parish more than five years prior to the filing of this suit.
The Constitution, Article 10, Section 11, provides, in positive terms, that “No sale of property for taxes shall be set aside for any cause except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the *964 proceeding to annul is instituted within six months from service of notice of sale, * * and within five years from the date of the recordation of the tax deed, if no notice is given.” It is well recognized that the jurisprudence has added another exception to this rule and that a tax sale of the property for taxes can also be set aside in cases where it is shown that the tax debtor or his heirs has remained in actual, corporeal possession of the property. The issue that is presented in this case, therefore, relates to the question of possession and unless the defendants have been able to meet the requirements of such possession as the jurisprudence has laid down, it is clear that plaintiff is protected in his purchase of the property by the prescription of five years which he has pleaded against the re-conventional demand of the defendants.
On the question of possession, the record shows that after plaintiff purchased his interest in the property from Hummel, he made arrangements with a colored man by the name of John Blount to take care of his cattle which he had on his 50 acre tract which adjoined the 81 acre property on the west, and in return for the service he rendered, Blount could farm the land free of any charges or rent. It is shown that plaintiff furnished some wire fencing which was used to fence up a garden patch of about one acre next to his 50 acre tract and that Blount cultivated that portion of the property. After Blount’s death the plaintiff made a somewhat similar arrangement with a man named Cleveland Clark, who apparently did a little more extensive cultivation on some patches on the 27 acre tract immediately adjoining plaintiff’s 50 acre tract. Kaufman paid for the fertilizer used by him in his farming operation. After the crops were harvested plaintiff’s cattle were permitted to roam from his 50 acre tract of .land over the entire 81 acre tract where they mingled with the few cattle the defendants had.
Moreover it is shown that at one time Kaufman rented a portion of the 81 acres to a party by the name of Newman, his neighbor, who. owned’ the property south of the tract of land and who ran cattle on the 81 acres, ocupying it as Kaufman’s tenant.
Also it is shown that Kaufman was made a codefendant in an expropriation proceeding brought by the United States Government for a right of way through the property and that he received one-third of the damages paid as co-owner with the other defendants.
At one time when' the Jackson heirs attempted to sell timber off the tract of land, Kaufman objected and none of them seemed to have questioned his rights in the matter.
On the other hand, when we come to consider the possession shown by the defendants, all we find that the record reveals is that in 1930, one Freddie Jackson and his father, Hosea Jackson, son of James Jackson, lived on the 81 acre tract and continued to live there until the later part of the year 1936. In 1932 a cousin, Elizabeth *966 Jackson and her husband, Albert Ross, also moved on the property and remained on it until 1950 When they left, a niece of Freddie Jackson and her husband moved on the property, remaining there until June 1950 and afterwards Frank Duncan moved on it in August of that year and stayed there until January 1951. In all of these years none of these parties objected to Kaufman’s use of the property in the manner he did but on the contrary they all seemed to acknowledge his ownership and possession.
It appears from the record that after the year 1931 the defendants were assessed with and paid taxes, according to the assessment roll, on “fifty-four acres being an undivided two-thirds interest in 81 acres” and plaintiff and his author in title paid taxes according to an assessment in their respective names,- when each had title, on “twenty-seven acres being an undivided one-third interest in 81 acres.”
With these facts regarding possession before him the trial judge concluded that the defendants, as heirs of the tax debtor, had not shown the necessary possession contemplated by the jurisprudence to set aside the tax sale basing his ruling on the decision of this court in the case of Board of Commissioners v. Sperling, 205 La. 494, 17 So.2d 720, 722. In that case, following the prior jurisprudence, the court held that the possession necessary to overcome the plea of five years prescription which protects a purchaser at tax: sale must be “actual corporeal possession by which they (the tax, debtors) exercised some claim of exclusive dominion over the property, a claim operating as a continuing protest against the tax title”.
The Court of Appeal [55 So.2d 41] states in its opinion that “There is not the least question about the fact that Kaufman never exercised the least possession insofar as the 54 acres was concerned.” Even though matters relating to Kaufman’s possession were to be considered, we cannot agree with the statement made because it is a fact that Kaufman’s cattle were sent to graze over the whole 81 acre tract of land after the crops had been harvested, and to that extent at least he exercised possession over the 54 acres which apparently the court had in mind. However, immediately following the statement quoted, the court seems to concede that the possession to be considered in cases of this kind is the one that is retained or exercised by the tax debtor after the tax sale of his property, and, as it is to be implied therefrom, the plaintiff’s possession is of no importance. The court seems to emphasize the point that Kaufman’s possession did not oust that of the defendants, but again we cannot understand why his ousting of their possession was necessary. The important matter was that they exercise possession to the exclusion of his, which possession, as stated in the jurisprudence, is in the nature of “a claim operating as a continuing protest against the tax title.”
*968 In this case we are not concerned with whether any of the parties exercised possession over any particular portion or number of acres of the property since the whole of it was owned in indivisión in the proportion of an undivided one-third by the plaintiff and the other undivided two-thirds by the defendants. Under that undivided ownership the defendants had as much right to the use and possession of the whole of the property as did the plaintiff and even though the plaintiff had attempted to oust them it would have been impossible for him to do so.
The Court of Appeal refers to the “equal possession”, or the “dual occupancy of the 27 acres” by the parties. Conceding that they had equal possession or that they dually occupied 27 acres of the whole tract, that would not avail the defendants anything for under the law it was necessary for them to have the exclusive control and dominion over the whole property in order to defeat the tax title which the plaintiff had acquired and which had been recorded more than five years previously. If the defendants really intended to dispute and contest the plaintiff’s tax title they should have insisted that he had no rights of possession at all. Instead of that they openly acknowledged his ownership, never insisting against any rights of possession on his part or protesting in any manner as to the use he made of it.
We are of the opinion therefore that the Court of Appeal erred in the conclusion it reached and in reversing the judgment of the trial court, and, for the reasons stated it is now ordered that the judgment under review be and the same is hereby reversed and set aside and it is further ordered that the judgment of the district court be and it is hereby affirmed.