358 So.2d 365 (1978)
G. W. HOLLEYMAN, Plaintiff and Appellant,
v.
Adrienne GARBARINO et al., Defendants and Appellees.
No. 6423.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1978.
Rehearing Denied May 24, 1978.
Writ Refused June 30, 1978.
J. Norwell Harper, Lake Charles, for plaintiff and appellant.
Knight & Knight, by William N. Knight, Jennings, Richard E. Gerard, Lake Charles, Carrol D. Van Geffen and George H. Van Geffen, New Orleans, Bean & Rush, by James W. Bean, Lafayette, for defendants and appellees.
Before CULPEPPER, DOMENGEAUX and WATSON, JJ.
*366 DOMENGEAUX, Judge.
This declaratory judgment suit was filed by G. W. Holleyman in 1966 to annul a 1945 tax sale of an undivided one-half interest in five acres of land. Holleyman was record owner of the land at the time of the sale. Issue was joined, and the suit lay dormant until 1972 when further pleadings were filed and the litigation reactivated. Holleyman died in 1974, and his widow and son were substituted as parties plaintiff. The defendants are former stockholders and successors in title of The Latreille Estate, Inc., which purchased the property at the 1945 tax sale. The property had been erroneously assessed in the name of The Latreille Estate for the year 1944. Instead of paying the taxes, Latreille bought the property at tax sale. Trial was held in 1977, and the trial judge found that the sale was not void under any recognized exception to the 5-year peremption of Article 10, Section 11 of the 1921 Constitution. From a judgment dismissing plaintiffs' suit and confirming and quieting defendants' title to the land in question, plaintiffs have appealed.
The substantial issues on appeal are: (1) Does a tax sale to one in whose name property is erroneously assessed constitute only payment of the taxes? (2) Did the plaintiffs, record owners, corporeally possess the property through possession by a railroad company of a servitude across the property, so that the five-year peremptive period did not run? (3) Should there be judgment in favor of the plaintiffs under the doctrine of equitable estoppel or does general equity demand such a judgment?
All of the facts are stipulated by agreement of the parties. The essential facts are: The land involved is a 5-acre tract in a rural area. G. W. Holleyman acquired ownership of this property in 1939. Plaintiffs, Holleyman's widow and son, were placed in possession of his interest in the property by judgment of recognition and possession in 1975. The Latreille Estate, Inc. first purchased the property at the tax sale in 1942 for taxes for 1941 assessed in the name of G. W. Holleyman. G. W. Holleyman redeemed the property from The Latreille Estate, Inc. by tax redemption deed dated March 26, 1943. Although this deed was filed for record on March 31, 1943, the property was erroneously assessed to The Latreille Estate, Inc. for the year 1944. G. W. Holleyman did not receive a tax notice on the property for the taxes of that year and did not pay taxes on the property for 1944. There was no dual assessment. The Latreille Estate, Inc., to whom the property was assessed for 1944, failed to pay the taxes for the year 1944. As a result, another tax sale, was held on June 6, 1945. The successful bidder at the sale for $3.66, was The Latreille Estate, Inc., acting through its employee and agent, Norberta Blessington, in whose name the tax deed was executed and recorded on June 8, 1945.
In October of 1950, The Latreille Estate, Inc. caused Norberta Blessington to execute a quitclaim on this property in favor of the said corporation. This deed was recorded on November 8, 1950. The stated consideration of $7.61 was not paid to Norberta Blessington since it represented the total of the taxes, interest, notice and filing costs that had been paid by the vendee, The Latreille Estate, Inc., when it purchased the property for itself in the name of Norberta Blessington at the tax sale on June 6, 1945.
G. W. Holleyman did not personally, physically and corporeally possess the property subsequent to the year 1944.
In 1901, Holleyman's ancestors in title acquired title to this property "subject to and less a right of way 200 feet wide across said land for La. W.R.R. Co." The Southern Pacific Railroad (successor to the Louisiana Western Railroad) has been in corporeal possession of this 200-foot strip, by maintaining its track and operating its trains daily, since prior to 1901. This strip is completely fenced and traverses the property at issue here. (There is no stipulation that the remainder of the property was fenced or otherwise enclosed.)
The Latreille Estate, Inc. was placed into liquidation after 1950. In 1954, as part of the distribution of assets to shareholders, a deed purporting to convey the property at *367 issue here to the defendants was executed, filed and recorded.
In 1965, G. W. Holleyman and the defendants each executed an oil, gas and mineral lease on this land in favor of William V. Conover. This suit was filed in 1966.
For the plaintiffs to be successful in their attempt to set aside the tax sale, they must overcome the constitutional peremption set forth in LSA-Constitution of 1921, Article 10, Section 11, which provides in part:
"No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given."
As noted in King v. Moresi, 223 La. 54, 64 So.2d 841 (La.1953), the language used in this constitutional provision is very broad and announces the public policy of this state to set at rest tax titles once and for all.
In addition to the exception to the 5-year peremptive period contained in the above quoted portion of the Constitution of 1921, i. e., proof of payment of the taxes, our jurisprudence has established two other exceptions. First, where the tax debtor remains in continuous corporeal possession of the property. Second, where there was no assessment of the property. Gulotta v. Cutshaw, 283 So.2d 482 (La.1973); Verret v. Norwood, 311 So.2d 86 (La.App. 3rd Cir. 1975).
Plaintiffs' first contention is that the purchase at a tax sale by one erroneously assessed with the taxes amounts only to the payment of the taxes by one under a duty to pay them, and that the tax sale is therefore absolutely null because the taxes for 1944 were paid. Plaintiffs admit they can find no Louisiana case to support this position. The issue is res nova in this state.
Of course, plaintiffs emphasize White v. White, 233 So.2d 289 (La.App. 1st Cir. 1970) and cases cited therein for the proposition that a purchase at a tax sale by a person who is under a legal or fiduciary duty to pay the taxes, is deemed as payment of the taxes. However, none of these cases deal with facts similar to the ones here. As the able trial judge noted: "It has to be a co-owner or one under some special duty because of his relationship to the record owner to pay the taxes who fails to pay the taxes and then buys it at the tax sale to prevent the peremptive period from running." None of the cases dealt with a tax sale purchaser who had been erroneously assessed with the taxes.
The trial judge correctly noted a property tax is an obligation on the land, not a personal obligation. Ducote v. City of New Orleans, 176 So.2d 198 (La.App. 4th Cir. 1965). The record owner of immovable property at the time of advertisement and sale for delinquent taxes is the delinquent tax debtor. Kuhn v. Sandefur, 28 So.2d 515, 517 (La.App. 2nd Cir. 1946). The only basis on which we could hold that The Latreille Estate, Inc. was under a duty to pay the taxes on the property at issue here is that the property was erroneously assessed in its name. Clearly, an erroneous assessment cannot alone create a duty to pay taxes. We conclude the sale cannot be attacked by plaintiffs on the basis that the taxes for 1944 were paid.
The second issue is whether the plaintiffs and their ancestors in title corporeally possessed the land through the possession by the railroad company of the 200 foot wide servitude across the property, so that the 5-year peremption did not run.
It was stipulated that except for the extent of possession by the railroad of a 200 foot strip of land traversing the property, Holleyman did not personally, physically and corporeally possess the property subsequent to the year 1944, the date of the tax sale.
The stipulated facts show that the property is subject to a right-of-way in favor of Southern Pacific Railroad (successor to the Louisiana Western Railroad) *368 which was granted sometime prior to 1901. The right-of-way affects a 200 foot strip of land traversing the property in an east-west direction located in the North Half of the property. The strip is fenced on both sides which completely separates it from the remainder of the property thereby dividing the property into two (2) separate pieces of property. The only corporeal possession to the property is limited to this strip and is by the railroad. The trial court's written opinion correctly disposes of appellant's argument concerning possession which we quote with approval as follows:
"Plaintiffs argue that Holleyman has remained in possession of the subject property, and, therefore, the five year peremptive period has been suspended. It was stipulated that except for the extent of the use by the railroad of a 200 foot strip of land traversing the subject property, Holleyman did not personally, physically and corporeally possess the property after the year 1944, the year of the tax sale.
It is well established that the possession required to prevent the loss of the property by virtue of peremption must be open, actual, physical and corporeal possession and of such a nature as to be a continuing protest against the tax sale. Board of Commissioners v. Sperling, 205 La. 494, 17 So.2d 720 (1944); Staring v. Grace, 97 So.2d 669 (La.App. 1st Cir. 1957). In Board of Commissioners v. Sperling and in Staring, the court discussed the type of possession necessary in order to prevent the peremptive period from running. Basically, one must have an exclusive domain over the property and the possession must be such that it acts as a continuing protest against the tax sale.
In this case, plaintiffs rely on the completely fenced 200 foot right-of-way which traverses the property in an east-west direction and which is located on the northern half of the subject property. Plaintiffs' argument that possession of part of the tract by or for the benefit of the record owner amounts to possession of the entire tract is basically correct.
The type of possession necessary to defeat the running of the peremptive period is similar to the type of possession necessary to acquire prescription in ten years, but it must also be of such character as to be a continuing protest against the tax sale by the tax debtor. The use by the railroad of the 200 foot strip was commenced before 1901, was the same prior to the 1944 tax sale, and has been the same ever since. This type of possession cannot be considered as a protest by the plaintiffs against the tax sale. The plaintiffs have failed to meet the burden required of them to prove possession in order to avoid the running of the peremptive period."
Our review of the jurisprudence dealing with possession in these type cases shows that it is given a narrow scope in that it must be corporeal and not civil or constructive. E. g., Westover Realty Co. v. State, 208 La. 163, 23 So.2d 33 (1945). Also, as spoken by the trial judge, the possession must be "in effect a continuous protest against the tax sale." Kuhn v. Sandefur, supra.
The thrust of plaintiff's argument concerning possession is that possession of a part of a tract by or for the benefit of the record owner amounts to possession of the entire tract and that corporeal possession of the 200 foot strip by the railroad enures to their benefit and is corporeal possession of the entire tract. This would be a viable argument if this was a possessory, petitory or boundary action. However, counsel has cited no case where this principle of law has been applied to the possession issue in a tax sale under the constitutional peremptive period. This type of possession has been a creature of the jurisprudence, the rationale for the rule being that it must be of such character as to be a continuous protest against the tax sale by the tax debtor. As pointed out by the trial court the possession by the railroad of the 200 foot fenced strip which separates the property has been the same since prior to 1901; was the same prior to the 1944 tax sale; and has been the same since. This by itself is certainly no *369 protest on the part of Holleyman, the tax debtor, of the tax sale. The most that can be said is that it is evidence of possession of the servitude rights of the railroad.
Although appellants seek to distinguish the case of Kaufman v. Jackson, 221 La. 957, 60 So.2d 886 (1952), we feel that this case is pertinent to the issue of possession. Kaufman was a proceeding to confirm and quiet a tax title. The claim of defendants that they and the deceased original tax debtor had continued in "actual, corporeal possession of the property" gave rise to a discussion of the nature of the possession of a piece of land, owned in undivided parts. The case involved title to an undivided 1/3rd interest in certain property. The entire property consisted of 81 acres, of which 27 acres or exactly 1/3rd of the property, was located next to the plaintiff's farm and was divided from the rest by a small creek. The heirs of the original tax debtor had exercised some acts of possession over the remaining 54 acres. In discussing possession the Court said:
"The Court of Appeal refers to the `equal possession', of the `dual occupancy of the 27 acres' by the parties. Conceding that they had equal possession or that they dually occupied 27 acres of the whole tract, that would not avail the defendants anything for under the law it was necessary for them to have the exclusive control and dominion over the whole property in order to defeat the tax title which the plaintiff had acquired and which had been recorded more than five years previously. If the defendants really intended to dispute and contest the plaintiff's tax title they should have insisted that he had no rights of possession at all. Instead of that they openly acknowledged his ownership, never insisting against any rights of possession on his part or protesting in any manner as to the use he made of it."
In the case before us now, even if it could be said that possession of the fenced 200 foot strip by the railroad was possession for appellant (a position which was not upheld by the trial court), under the law it was necessary for them to have exclusive control and dominion over the whole property in order to defeat the tax sale which by stipulation they did not have. Therefore, appellant has failed to prove the corporeal possession necessary to suspend the running of the five year peremptive period and the judgment of the trial court should be sustained on this issue.
Concerning the third issue, the Louisiana Supreme Court in the case of American Bank and Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35, at page 40 (La.1967) said:
"Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence."
Under that doctrine, the conduct of the party estopped must be relied upon by the other party, and thus relying, he must be led to act upon it to his prejudice. Here there is no reliance whatsoever by Holleyman on the conduct of Latreille.
Our courts have had numerous opportunities in the past to apply equitable principles in cases of this type, but they have not. See e. g., Cortinas v. Murray, 224 La. 686, 70 So.2d 589 (La.1954), and Staring v. Grace, supra. It should be noted, in referring to equitable principles, that when Holleyman redeemed the property from Latreille in 1943 he had the duty to see that his taxes on the land were promptly paid in the year 1944. This he failed to do. Now, after many years, he (and the present plaintiffs) seek to rescind the tax sale. We do not find that equitable estoppel is applicable to this case. Additionally, any equitable feelings which he may have for plaintiffs must succumb to the strong public policy favoring the validity of tax sales and our inability to place the facts of this case in *370 any of the aforementioned exceptions to the five year constitutional peremptive period.
For the above and foregoing reasons the judgment of the district court is affirmed at appellants' costs.
AFFIRMED.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge, dissenting.
As to issue number 1, I agree with the majority that the purchase at the tax sale by the Latreille Estate, in whose name the property was erroneously assessed, did not constitute payment of the taxes. I also agree as to issue number 3 that estoppel does not apply.
However, as to the second issue, it is my view that the plaintiffs and their ancestor in title corporeally possessed the land continuously since the tax sale in 1945 through the possession by the railroad company of the 200-foot wide servitude across the property, and this continuous corporeal possession prevented the five-year peremptive period from running.
In the recent case of Parkway Development Corporation v. City of Shreveport, La., 342 So.2d 151 (La.1977), our Supreme Court held that a servitude granted for a railroad is a limited personal servitude, and, as such, is a real right. The court also held that the grantee of the servitude possesses the servitude for himself, but he possesses the land precariously for the owner of the land. Applying this rule to the present case, the railroad company corporeally possessed the 200-foot wide strip of land for the plaintiffs and their ancestor in title. See also Lawton v. Anthony, 92 So.2d 747 (La.App. 2d Cir. 1957) and Welsh Southern Oil Company v. Scurlock Oil Company, 201 So.2d 376 (La.App. 3rd Cir. 1967).
LSA-C.C. Article 3498 provides that "When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits." Jurisprudence construing this article has established the rule that when a person has title to a tract of land, corporeal possession of a part of the tract constitutes corporeal possession of the whole. Kilchrist v. Conrad, 191 So.2d 705 (La.App. 3rd Cir. 1966); Johnson v. LaBokay Corporation, 326 So.2d 589 (La.App. 3rd Cir. 1976). In the present case, the plaintiffs and their ancestor in title had a record title to the land in question. Thus, although the entire tract was not enclosed, the corporeal possession exercised by the railroad company of the 200-foot strip of land constituted corporeal possession of all of the land included within plaintiffs' title.
The next question is whether this corporeal possession by the plaintiffs and Mr. G. W. Holleyman, through the railroad company as grantee of the servitude, was sufficient to prevent the running of the five-year peremptive period applicable to tax sales. In Board of Commissioners for Atchafalaya Basin Levee District v. Sperling, 205 La. 494, 17 So.2d 720 (1944), our Supreme Court described the nature of the required possession as follows:
"As pointed out by the Court of Appeal in its opinion on the rehearing of this case, reported in 12 So.2d [41] at page 42: `The kind and nature of possession required to operate as a suspension of the prescription involved, is that of a corporeal detention of the property. Levenberg v. Shanks, 165 La. 419, 115 So. 641, 642. In that case it is also stated that "no other possession than actual corporeal possession is sufficient to operate as a continuing protest against the tax title, and thereby prevent the peremption from accruing."'
* * * * * *
"Therefore, in order to interrupt the running of the prescription of five years pleaded by Egle, the burden is on the Sperling heirs to show actual corporeal possession by which they exercised some claim of exclusive dominion over the property, a claim operating as a continuing protest against the tax title held by Egle."
In the case of Westover Realty Company v. State, 208 La. 163, 23 So.2d 33 (1945), the *371 tax debtor cut the weeds and grass on the land on several occasions during the five-year period and also visited the property on several other occasions. The court held this was not continuous corporeal possession and was not sufficient. The opinion states:
"But the possession must be a corporeal possession and not a mere civil possession flowing from the title deed or a constructive possession following the termination of a corporeal possession. Levenberg v. Shanks, 165 La. 419, 115 So. 641."
In Kuhn v. Sandefur, 28 So.2d 515 (La. App. 2d Cir. 1946), writ of certiorari denied the court held:
"The best that can be said of plaintiff's possession of the lot in question is that it is and has been only civil, which is not adequate to prevent the operative effect of the pleaded prescription. The possession required to prevent the current of such prescription must be open, actual and physical; of such character as to be in effect a continuous protest against the tax sale; it must be of such character as to form the basis of the prescription of ten (10) years. This is lacking in the present case. Board of Commissioners for Atchafalaya Basin Levee District v. Sperling, 205 La. 494, 17 So.2d 720."
Under these cases, and the others cited therein, the jurisprudence is established that continuous corporeal possession is required to prevent the running of the five-year peremption. The term "corporeal possession" is defined in our statutory law, LSA-C.C. Articles 3426, 3427, 3428, 3430, and 3436. In the comment under LSA-C. C.P. Article 3660, it is explained that terms such as "actual possession", "real and actual possession", "physical possession", etc., used in some of the jurisprudence, are all included within the term "corporeal possession."
Of course, the meaning of the term "corporeal possession" is well established in our jurisprudence. In the recent case of Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.S.Ct.1975), our Supreme Court reviewed the jurisprudence as to what constitutes corporeal possession of different types of land, such as agricultural land, wood land, swamp land, etc. I mention this only to make the point that our jurisprudence has established clearly the meaning of the term "corporeal possession", and this is the term which has been used in all of the prior jurisprudence in describing the type of possession necessary to prevent the running of the five-year peremption. Of course, in the present case there is no issue as to the fact that the railroad exercised corporeal possession of the 200-foot strip of land, because this was stipulated by the parties.
Summarizing my view, the railroad has been in continuous corporeal possession of the 200-foot strip of land since the tax sale in 1945, this possession by the railroad is possession of the strip of land for the owner, and possession of part of the five-acre tract is possession of the whole of the five acres to which plaintiffs have title.
The majority has held that something more than "corporeal possession", as this term is defined and used in our law, is required to prevent the running of the five-year peremptive period. The majority opinion states:
"In the case before us now, even if it could be said that possession of the fenced 200-foot strip by the railroad was possession for appellant (a position which was not upheld by the trial court), under the law it is necessary for them to have exclusive control and dominion over the whole property in order to defeat the tax sale which by stipulation they did not have. Therefore, appellant has failed to prove the corporeal possession necessary to suspend the running of the five year peremptive period and the judgment of the trial court should be sustained on this issue." (emphasis supplied)
In effect, the majority is holding that the possession required of the tax debtors must be by them personally and not through others who possess for them. Of course, this differs from the above discussed rule of corporeal possession established in our law that the owner can possess through others. Furthermore, the majority is holding that *372 to prevent the running of the five-year peremption the tax debtors must possess "the whole property", which I take to mean that they must have some type of fences or other enclosures, as is required of the corporeal possession necessary for 30 years acquisitive prescription. This is contrary to the rule that corporeal possession of part is corporeal possession of the whole within a person's title.
The majority has established a new type of special, sui generis possession required to prevent the running of the five-year peremptive period. It is my view that this will only add confusion to the already complex rules controlling suits to quiet tax sales. It would be far better to follow the cases cited above which clearly hold that the type of possession required to prevent the running of the five-year peremptive period is continuous corporeal possession, as these terms are defined and established in our law.
Apparently the majority considers this an unusual case because the continuous corporeal possession was by a railway company possessing a servitude for itself and possessing the land for the owner. The rationale of the majority in this regard must be that a person who sees a fenced railroad track crossing a piece of land would not consider this notice that the railroad company was possessing the strip of land for the owner. It is my view that, under established rules and concepts of our law, it makes no difference whether this was a railroad company possessing for the owner, or whether it was a usufructuary cultivating the 200-foot strip, or a lessee living on the strip, or the owner of any other real or personal right possessing the land for the owner.
For the reasons assigned, I respectfully dissent.