527 So.2d 1190 (1988)
St. Louis MURPHY, Plaintiff-Appellant,
v.
ESTATE OF Philip SAM, et al, Defendants-Appellees.
No. 87-120.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*1191 Dwight D. Reed, Opelousas, for plaintiff-appellant.
Peter C. Piccione, Jr., Lafayette, Richard B. Millspaugh, Opelousas, for defendants-appellees.
Before FORET, DOUCET, LABORDE and KNOLL, JJ., and SWIFT[*], J. Pro Tem.
DOUCET, Judge.
Plaintiff, St. Louis Murphy, appeals from a judgment dismissing his suit to quiet his tax title to a lot located in the City of Opelousas.
The City of Opelousas assessed Philip Sam property taxes in the amount of $2.10 for the year 1979 on a 50 x 100 foot residential lot with a house on it. Sam was the record owner at the time the assessment was made. The taxes were never paid and both Sam and his wife passed away, apparently in the early part of 1980. In May 1980, the administratrix of their estates sold the lot to Mr. and Mrs. Robert J. Fenelon. The Fenelons were unaware of any tax delinquency for 1979 and the taxes remained unpaid. Subsequently, on September 6, 1980, the lot was sold by the City of Opelousas to plaintiff to satisfy the debt due for the unpaid property taxes. On January 11, 1983, the Fenelons sold the lot to Mr. and Mrs. Oliver Peltier. All three sales were recorded in the conveyance office for the Parish of St. Landry within days or weeks of the respective sales.
On October 24, 1985, pursuant to La.R.S. 47:2228, plaintiff brought this suit to quiet his tax title naming as defendants the estates of Philip and Bertha Sam, Mr. and Mrs. Fenelon, and Mr. and Mrs. Peltier. The Peltiers filed a third-party demand against the Fenelons. The trial court found that none of the property owners had received notice of delinquency as required by law and therefore, the sale was an absolute nullity.
The record clearly shows that notice of delinquency was not given as required by law. La. Const. art. 7, § 25(A) provides for tax sales and states in part "... at the expiration of the year in which taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due." La.R.S. 47:2180 provides for notice of delinquency and at the time of the tax sale stated:
"A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or *1192 may make personal or domiciliary service on the taxpayer.
After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of this notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales. He shall pay for the publication, and shall be entitled to collect as costs therefor the pro rata share of the publication costs from each unknown owner or from the property assessed to him. The collector shall certify on his tax rolls that he has published the notices, and the certificate on either roll shall make full proof thereof until disproved in a judicial proceeding."
The provisions of R.S. 47:2180 are made applicable to parishes and municipalities by La.R.S. 33:461.
It is not argued that notice could have properly been given as set out in subsection C, for at no time was the owner of the property unknown or a nonresident. Notice should have been given as set forth in subsection B. The record contains no proces verbal evidencing that notice was lawfully given. On the contrary, the record contains, by authentic act, a statement by the City Clerk of Opelousas reciting that between the years 1971 and 1985, his office, which was responsible for notifying tax delinquents, did not sent out such notices by either certified mail, or apparently, registered mail. The statement more specifically confirms that no such notices were sent to Philip Sam or the Fenelons regarding the tax delinquency on the property in question for the year 1979.[1] The only notice of the pending tax sale was the advertisement in the official journal prior to the sale.
La. Const. art. 7, § 25(C) provides a five-year peremptive period within which a tax debtor or his successor(s)-in-title may seek to set aside a tax sale. After the expiration of that period the right has been held to be completely extinguished absent three circumstances, none of which are present in the case at bar.[2]
*1193 However, a review of Louisiana jurisprudence shows what appear to be conflicting opinions as to the effect of a failure to give notice of a pending tax sale to the delinquent and/or the record property owner. Some courts have held that the failure to give such notice, alone, is a relative nullity cured by the expiration of the five-year constitutional peremptive period. Thompson v. Walker, 235 La. 519, 104 So.2d 721 (1958); Preston v. McGehee, 502 So.2d 171 (La.App. 3rd Cir.1987); Kemper v. Dearing, 369 So.2d 1208 (La.App. 2nd Cir.1979); Lasseigne v. Clement, 311 So.2d 600 (La. App. 4th cir. 1975), writ denied, 313 So.2d 846 (La.1975); Welsch v. Carmadelle, 264 So.2d 341 (La.App. 4th Cir.1972), writ denied 262 La. 1181, 266 So.2d 452 (1972).
In at least two Louisiana cases coming out the First Circuit, it was held that notice of a delinquency and pending tax sale is jurisdictional in nature and lack of such notice renders the tax sale an absolute nullity. See Florida v. Roscoe, 479 So.2d 406 (La.App. 1st Cir.1985); Hubbs v. Canova, 392 So.2d 486 (La.App. 1st Cir.1980), affirmed 401 So.2d 962 (La.1981).
On appeal plaintiff cites La. Const. art. 7 § 25(C) and contends that none of the successor(s)-in-title of the Sams, the Fenelons or the Peltiers, may now seek to set aside the tax sale or raise lack of notice as a defense to his suit to quiet tax title since the five-year peremptive period has expired. The defendants-appellees claim that the tax sale to plaintiff is an absolute nullity since no notice of delinquency or the pending tax sale was given to anyone as required by law, particularly to the record owners at the time of the sale, the Fenelons. Alternatively, it is asserted that they have exercised continuous, actual, and open corporeal possession of the property thus preventing the running of the five-year peremptive period.
The 14th Amendment to the U.S. Constitution states in part that, "nor shall any State deprive any person of ... property, without due process of law." Given the facts presented herein we find that the failure to even attempt to notify the Fenelons, record owners of the property, apparent from mere inspection of the parish conveyance records, by certified or registered mail or by personal service, does not satisfy the due process requirements of the 14th Amendment as applied by the United States Supreme Court in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In that case, Mennonite Board of Missions (Mennonite) was the mortgagee of record of a certain parcel of property. The owner failed to pay her property taxes and the property was sold at a tax sale. Indiana law did not require that notice be given by mail or personal service to a mortgagee and Mennonite was not given any notice of the pending tax sale. Relying on principles espoused in its earlier decision in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and progeny, the Court held that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale" and therefore "is entitled to notice reasonably calculated to apprise him of a pending tax sale."
Commenting on the publication of notice of the pending tax sale in a newspaper and the posting of notice in the county courthouse the Court stated:
"When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane." (Footnotes omitted) *1194 The Court further stated that "notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition" if the interested party's "name and address are reasonably ascertainable."[3]
The Mennonite, supra, case has received scant consideration and comment by Louisiana courts. In Dennis v. Vanderwater, 498 So.2d 1097 (La.App. 3rd Cir.1987), writ denied, 501 So.2d 211 (1987), this court cited Mennonite and the Supreme Court's holding concerning the due process requirement of notice but did not rely on it in disposing of the issues presented since under the facts of the case it was not applicable. In Magee v. Amiss, 502 So.2d 568 (La.1987) a residential lot, part of the community of acquets and gains between plaintiff and her estranged husband, was seized and sold to satisfy a judgment against the husband for a separate obligation. The original act of sale, recorded in the mortgage records of East Baton Rouge Parish, recited that the purchaser, Mr. Magee, was "married to and living with" the plaintiff. However, plaintiff did not receive any notice of the pending sheriff's sale. Citing Mennonite, supra, the Louisiana Supreme Court stated:
"On April 21, 1980, when lot forty-three was sold at sheriff's sale, the interest of Doris Magee in the property seized and sold at auction was apparent on the face of the public records, appearing in the recorded deed to which attention was directed by the certificate of mortgages. Alienation of the property without her consent required some notice to her apart from mere publication and advertisement of the sale. LSA-C.C. art. 2347. Her due process rights were violated by the lack of notice. A co-owner like Doris Magee would be entitled to at least the minimum protection recognized in Mennonite."

The Court held that the purchasers at the sheriff's sale and their successors-in-title acquired only the husband's undivided one-half interest in the property while plaintiff retained her undivided one-half interest.
In the case at bar the City of Opelousas, charged by La. Const. Art. 7, § 25 and La.R.S. 47:2180 with notifying the record owner of the delinquency and forthcoming tax sale should the taxes remain unpaid, made no effort to comply with the legal requirement of notice other than publishing notice in a St. Landry Parish newspaper. The City made no attempt whatsoever to notify by mail or personal service, the record owners, who recorded their purchase of the property at least three months prior to the tax sale. Considering the peculiar facts and circumstances of this case in light of the holding of the U.S. Supreme Court in the Mennonite case, as well as the conflicting holdings of Louisiana Courts on the effect of the failure to give notice in these tax sale cases, we find that the failure of the City of Opelousas to even attempt to notify the Fenelons, by mail or personal service, of the delinquency and pending tax sale renders the tax sale by the City null and void.
The Supremacy Clause of U.S. Const. Art. VI states:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
To the extent that our holding in this case may conflict with prior jurisprudential interpretations of the peremptive period provided by La. Const. Art. 7, § 25(C) it is clear, at least with respect to the peculiar facts and circumstances of this case, that such jurisprudence offends and does not comport with the due process requirements of the 14th Amendment to the U.S. Constitution as set forth by the U.S. Supreme Court in Mennonite Board of Missions v. *1195 Adams, supra. We must, therefore, defer to the mandate of the U.S. Constitution as interpreted by the U.S. Supreme Court.
For the reasons assigned, we affirm the judgment of the trial court dismissing plaintiff's suit and declaring the tax sale to plaintiff, St. Louis Murphy, an absolute nullity. We affirm the judgment of the trial court annulling the tax sale with the proviso that pursuant to La. Const. Art. 7, § 25(C), "No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the [tax sale] purchaser," plaintiff, St. Louis Murphy.[4]
Costs of this appeal are assessed against plaintiff, St. Louis Murphy.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
SWIFT, J., dissents for the reasons assigned by KNOLL, J.
KNOLL, Judge, dissenting.
In the case sub judice, I would reverse the trial court, recognize the ownership of the tax purchaser, St. Louis Murphy, and render judgment on the third-party demand in favor of the third-party plaintiffs, Oliver and Nellie Peltier, and against the third-party defendants, Robert J. Fenelon and Delores Fenelon.
Even though the lack of notice is undisputed, I find that the five year peremption provided by LSA-Const. Art. 7, Section 25(C) cured any irregularity in that regard since the record does not establish sufficient possession by any party to interrupt the peremption. Contrary to the majority's holding, I do not find that under Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), that our constitutionally provided peremptive period is violative of the due process requirements of the 14th Amendment of the U.S. Constitution.
For these reasons, I respectfully dissent.
NOTES
[*] Judge G. WILLIAM SWIFT, JR., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] R.S. 47:2180(D), as added by Acts 1985, No. 636, § 1, now provides an additional safety check:

"Within thirty days after the tax sale, or as soon thereafter as possible, the tax collector shall research the records of the clerk of court for transfers on all property sold. Within thirty days of finding a transfer of any property sold at a tax sale, the tax collector shall attempt to serve the new owner with a certified notice that the property was sold and include in the notice the amount necessary to redeem the property. This notice shall also advise the owner that the property may be redeemed at any time within three years from the date of recordation of the sale. This shall serve as the required notice to the record owner in Subsection A of this Section."
[2] The exceptions of peremption which may arise under the constitutional provision are set forth in a great number of cases found in our jurisprudence which recognizes only three causes for which a debtor may set aside a sale of property for taxes after the lapse of five years after date of registration of the tax deed and these are: prior payment of taxes, continued physical possession by the debtor, and no assessment. Gulotta v. Cutshaw, 283 So.2d 482 (La.1973); Mansfield Hardwood Lumber Company v. Butler, 234 La. 322, 99 So.2d 129 (1958); Holleyman v. Garbarino, 358 So.2d 365 (La.App. 3rd Cir.1978), writ denied 359 So.2d 1304 (La. 1978); Verrett v. Norwood, 311 So.2d 86 (La. App. 3rd Cir.1975).
[3] For an in-depth discussion of the implications of Mennonite Board of Missions v. Adams, supra, for Louisiana tax sales, see Notice of Seizure in Mortgage Foreclosures and Tax Sale Proceedings: Ramifications of Mennonite, 48 La.L.Rev. 535, 573 (1988).
[4] As mentioned by the trial judge defendants did not file a reconventional demand to annul the tax sale but simply set forth lack of notice as a defense to plaintiff's suit. The finding by the trial court that the tax sale was an absolute nullity, however, had the effect of a "judgment annulling a tax sale."